JULIET P. HAMILTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45790.   Promulgated April 27, 1932.

*L. A. Keyes, Esq.*, for the petitioner.
*N. Gammon, Esq.*, for the respondent.

OPINION.

MURDOCK: The present controversy arises over an alleged loss sustained upon the sale of a picture painted in oil by the famous English artist of the eighteenth century, Thomas Gainsborough. The petitioner, on her return, had computed her tax upon the basis of ordinary net income and deducted therefrom, to comply with the provisions of section 208(c), $3,337.50 representing 12½ per cent of an alleged capital net loss amounting to $26,700. The Commissioner decided that section 208 did not apply, since there was no deductible loss under section 214(a), and determined a deficiency of $3,337.50.

The parties filed a stipulation of facts as follows:

It is hereby stipulated and agreed by and between the parties to the above-entitled proceeding, through their respective attorneys of record, that the following are the facts which form the basis for the above-entitled proceeding:

That petitioner is an individual residing at Sterlington, New York. That on March 31, 1916 petitioner acquired a Gainsborough Painting as a personal, specific bequest from her father, the late J. Pierpont Morgan, and that said painting was listed on the inventory of the estate of said J. Pierpont Morgan at a value of $100,000.00. That thereafter this painting was kept by petitioner in her home, except that, on several occasions, without pecuniary profit to petitioner, it was placed on exhibition where it was made available for inspec-

tion by art students and lovers of art; and while in petitioner's home it was, by specific arrangement, in certain instances, made available for free inspection. That petitioner kept said painting until April 28, 1926 on which date it was sold for $73,300.00. That in her income tax return for 1926, petitioner subtracted $3,337.50 from the total tax for that year, which amount is 12½ per cent of $26,700.00 which is claimed as a capital loss on the sale of said painting. That said deduction was disallowed by the Commissioner of Internal Revenue.

The facts hereinbefore stipulated constitute the entire evidence to be submitted to the Board of Tax Appeals by the parties hereto.

Despite the last sentence of the stipulation, we take cognizance of certain other facts important to the petitioner's case which are in evidence through the respondent's admissions and concessions. The fair market value of the painting in question, at the date of the death of J. Pierpont Morgan, was $100,000. The price obtained for it on April 28, 1926, was a fair price obtained in an arm's length transaction. If the petitioner is entitled to deduct, under section 208(c), 12½ per cent of the loss on the sale of the picture, her tax liability was properly computed on her return and was not less than the taxes imposed by sections 210 and 211 computed without regard to the provisions of section 208.

The Commissioner has denied that the loss was a " capital loss " within the meaning of the Revenue Act of 1926. The rational of his brief is that the words of the statute are ambiguous, but similar words in previous acts have been interpreted by him as applying only to losses in transactions entered into for profit, and since Congress has continuously reenacted the provision without substantial change, the departmental construction has received the Congressional stamp of approval and is controlling. This argument does not carry conviction in the present case. It is opposed by the rule that doubts in a revenue statute are to be resolved in favor of the taxpayers. Furthermore, there has been no long continued executive construction of a provision reenacted by Congress without substantial change. There was substantial change in the Revenue Act of 1924, and the executive construction relied upon may not be considered to antedate the regulations first published under that act in October, 1924.

His determination, however, is correct. The Revenue Act of 1921, in section 206, had given the taxpayer an election to have capital net gain taxed under the special method therein provided. It made no provision for capital net loss. In defining capital assets it required that they be property acquired and held by the taxpayer for profit or investment. The Revenue Act of 1924, in section 208, contained a somewhat similar provision for taxing a capital net gain, but also contained a new provision limiting the amount by which the tax might be reduced on account of a capital net loss. In the definition of capital assets contained in this section, that part of the definition

contained in the 1921 Act above referred to was dropped. The reason for this change was to permit taxpayers, at their election, to have a gain from the sale of residence property taxed under the capital net gain provision. The definition of capital loss is the same in the 1921 Act, 1924 Act, and 1926 Act.

There is nothing in the legislative history of the 1924 and 1926 Acts which would indicate that Congress intended to be any more generous in allowing deductions for losses than it had been in the past. A contrary intent appears, since the mandatory provisions relating to capital net loss restricted rather than enlarged the benefits granted taxpayers. See *Piper* v. *Willcuts*, 55 Fed. (2d) 397.

In our opinion there is no ambiguity in the statute. Section 208 deals with capital gain and losses. The term in controversy " capital loss " is defined in section 208 (a) (2) as follows: " The term ' capital loss ' means deductible loss resulting from the sale or exchange of capital assets." This definition requires three things: (1) There must be a loss; (2) it must be a deductible loss; and (3) it must result from the sale or exchange of capital assets. In the present case there has been a loss. This loss resulted from the sale of a capital asset. But was the loss a deductible one? Had the statute read " ' capital loss ' means loss resulting from the sale or exchange of capital assets," her case would have come within the definition. But Congress used the adjective " deductible " to modify the noun " loss," and the adjective may not be disregarded. Its presence in the definition indicates that Congress intended the capital loss provisions to apply only where the loss is the kind of a loss which would otherwise be deductible under the other provisions of the statute. This is the position taken by the Commissioner in his notice of deficiency.

Section 214 allows individuals to deduct three kinds of losses, but one kind could have no relation to section 208, since it consists of losses arising from fires, storms, shipwrecks or other casualty, or from theft, whereas section 208(a)(2) is concerned only with loss resulting from a sale or an exchange. The petitioner does not contend that her loss was incurred in any trade or business; therefore, section 214(a)(4) has no relation to this case.

This brings us to section 214(a)(5), which allows the deduction, under certain circumstances, of losses incurred in any transaction entered into for profit. The petitioner makes the contention that " the ownership of an object of art representing an investment of $100,000 which is a ' capital asset ' even though acquired by gift, is nevertheless a transaction entered into for profit." We do not agree that there is any general rule of this kind. Furthermore, what facts are

there in this case which indicate that in acquiring the picture this petitioner was entering into a transaction for profit or that the possibility of future profit or loss was of any significance in the transaction? We know that she acquired this picture worth $100,000 from her father at his death, in accordance with a specific direction of his will. Why it was given or what the petitioner had in mind in accepting it we do not know. We have not heard that she then had any thought of the ultimate disposition of the painting. She retained the picture for about ten years without ever attempting to derive any money profit from it. Then she sold it for less than its former value. The acquisition of a work of art by an individual is usually for the purpose of realizing benefits of ownership not measurable in money. A probability of money loss may be of little or no importance. No deduction is allowed for loss on property acquired primarily for personal use or enjoyment unless the loss arises from casualty or theft.

We need not concern ourselves with its reason for limiting the deduction for losses; the fact is that Congress has not permitted all losses to be deducted from income. Here, there may be no deduction under the law, for the record does not show a loss in a transaction entered into for profit.

*Judgment will be entered for the respondent.*