JOHN D. RONEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MORRIS SCHAPIRO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52337, 52338. Promulgated October 18, 1932.

*W. H. Wallace, Esq.*, and *J. C. McGarraghy, Esq.*, for the petitioners.

*J. A. Lyons, Esq.*, for the respondent.

OPINION.

ARUNDELL: These proceedings were consolidated for hearing and report, and involve the redetermination of deficiencies of $35,373.07 and $17,712.04 in income taxes proposed for assessment against the respective petitioners for 1928.

Since 1910 each of the petitioners has owned a one-half interest in the Boston Iron & Metal Company, a partnership engaged in the

scrap iron business. During the course of operation of such business, the partnership acquired the lands, buildings and equipment of a number of whiskey distilleries located in the States of Kentucky, Pennsylvania and Maryland, for the purpose of dismantling the property and salvaging the material. One of the properties acquired was the Gwynnbrook Distillery Company, located in Baltimore, Maryland, which was purchased at public auction in the fall of 1919. The plant was not in operation at the time of the sale.

After partially dismantling the Gwynnbrook Distilling Company plant the petitioners decided to use the facilities to manufacture whiskey for medicinal purposes. Whiskey-distilling operations were conducted at the plant from the fall of 1920 until the spring of 1921 and from the fall of that year until January, 1922, under a Government permit obtained in 1920, good for one year, and a renewal thereof granted in 1921. The former superintendent of the Gwynnbrook Distilling Company had charge of the manufacture of the product. The distilling business of the petitioners was carried on as a partnership under the firm name of the Gwynnbrook Company. The petitioners made no attempt to renew the permit and they have not been engaged in distilling operations since 1922.

After the whiskey had been manufactured it was stored at the plant of the Gwynnbrook Distilling Company. Certificates for the whiskey issued by the Gwynnbrook Distilling Company were delivered to the petitioners in equal numbers. In 1924, at the request of the Federal Government, the whiskey was removed to a concentration warehouse in Baltimore. In 1925 the property was placed in storage in warehouses of the Baltimore Distilling Company. With each transfer of location of the whiskey new certificates were issued for the property. The certificates issued by the Baltimore Distilling Company were sixty in number and subject to the order of the Gwynnbrook Company.

In 1925 the partnership sold all of the whiskey to one purchaser for delivery in specified quantities annually from 1927 to 1932, inclusive. The whiskey represented by the first nine certificates was delivered and paid for in 1927. The whiskey evidenced by certificates numbered ten to sixty, inclusive, was delivered in 1928.

The plant in which the whiskey was manufactured was dismantled in 1927 or 1928.

It has been stipulated that the gain realized in 1928 on the deliveries made in that year was $630,027.29 and that one-half thereof is taxable to each petitioner. Whether these sums are taxable as capital gains, as reported by the petitioners, or as ordinary income, as determined by the respondent in his audit of the returns, is the sole question in dispute.

A capital asset is defined in section 101 (c) (8) of the 1928 Act to mean:

\* \* \* property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. \* \* \*

It is established that the property was held by the taxpayers for more than two years; hence it comes within the first provision of the quoted section. Thus the question is narrowed to that of determining whether the respondent erred in treating the property as coming within one of the classes described in the later provisions of the statute as not comprehended within the term " capital assets." If the property comes within any one of the excluded classes the respondent's determination must be sustained. The plan of the taxing statute is to subject the net income of all individuals to the normal taxes and surtaxes therein levied, with certain exceptions, one of which is the capital net gain provision here involved, and any taxpayer seeking the benefit of the lower rate permitted by the exception must show clearly that he is entitled to it.

One of the classes of property which does not come within the term " capital assets " is property held primarily for sale in the course of the taxpayer's trade or business. The evidence and argument are directed principally toward establishing that the trade or business of petitioners was that of dealers in scrap iron rather than whiskey or whiskey certificates. But a person may have more than one trade or business; he may have a principal business and at the same time engage in side ventures which, though occupying less of his time and attention, may constitute a business if entered into for profit. *Ignaz Schwinn*, 9 B. T. A. 1304. In such cases the statutory term " trade or business " applies to the lesser as well as the principal occupation. See *James R. Deering*, 5 B. T. A. 1055; affd., 23 Fed. (2d) 975.

Petitioners' operation of the distillery extended over two distillery seasons, 1920–1921 and 1921–1922. According to their petitions, they manufactured 518,141.79 gallons of whiskey. Operations as extensive as these, conducted for profit, we think may properly be said to constitute a business. Certainly, from the viewpoint of time and magnitude of the operations they can not be considered as a single, isolated transaction. The production involved the use of a fully equipped whiskey-distilling plant and the employment of men. The petitioners carried on their distilling operations under the firm name of the Gwynnbrook Company and gave their product the name of " Gwynnbrook Pure Rye Whiskey." The whiskey was stored prior

1216

to sale, and was sold, under the firm name. While the whiskey was in storage it was held primarily for sale, the time to depend upon market conditions. The time must have appeared to be ripe in 1925, for the whole lot was then sold by the partnership for future deliveries. The manufacture, storage, and sale of the whiskey was all in accordance with the plan adopted before distilling operations were commenced.

Another class of property excluded from capital assets is inventoriable stock in trade. Whiskey was the stock in trade of the petitioners, operating as the Gwynnbrook Company, and is property which would properly be included in the inventory of the partnership if on hand at the close of the taxable year. *Renziehausen* v. *Lucas*, 280 U. S. 387.

One of the petitioners testified that he regarded the distillery venture as an investment. The application of that term to manufacturing operations is, on its face, a very strained and unnatural use of it.

Petitioners have failed to establish to our satisfaction that the whiskey represented by the certificates sold in 1928 does not come within the classifications of property described in the statute as excluded from " capital assets," as found by the respondent.

*Decision will be entered for the respondent.*