DeWitt Page, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 78907.    Promulgated May 19, 1936.

*Benedict M. Holden, Esq.*, and *Daniel C. Flynn, Esq.*, for the petitioner.

*Paul E. Waring, Esq.*, and *A. H. Fast, Esq.*, for the respondent.

OPINION.

SMITH: .This is a proceeding for the redetermination of a deficiency in income tax for 1932 in the amount of $28,167.89. During the year the petitioner sold certain securities which he had held for a period of more than two years at a large loss. The principal question presented by this proceeding is whether the securities were acquired and held by the petitioner primarily for sale in the course of his trade or business so as to be excluded from the definition of "capital assets" within the meaning; of section 101 (c) (8) of the Revenue Act of 1932, and, therefore, when computing petitioner's net income for that year the loss so resulting from the sale of those securities should be allowed only to the extent of the gains from such sales as is stated in section 23 (r) (1) of the Revenue Act of 1932.

If the loss sustained upon the sale of the securities was a capital net loss, then the amount of the charitable contributions of petitioner deducted from gross income is to be limited to an amount not exceeding 15 percent of the correct net income under the provisions of section 23 (n) of the Revenue Act of 1932.

The petitioner is an individual who has been connected with the New Departure Manufacturing Co. for 40 years, 20 years of which he was president and general manager. He resigned his position as general manager on January 6, 1933, but continued on as president. He was, and still is, a vice president and director of General Motors Corporation, of which company the New Departure Manufacturing Co. is a subsidiary. The last named company manufactures ball bearings, coaster brakes, bells, and cyclometers. In 1931 and 1932 it employed about 2,000 men and did a net business of millions of dollars. In 1932 the petitioner was worth, based on the market value of securities owned, in excess of $5,000,000, 60 percent of which was invested in General Motors stock. The petitioner's fortune in 1927 through 1934 was, with the exception of cash on hand, invested in common and preferred stocks of manufacturing, public utility, bank, and insurance companies.

At the beginning of 1932 the petitioner's health was very poor. He was suffering from prostate gland trouble and gallstones. On his doctor's orders he went to Florida on January 18, 1932, and returned about April 1, 1932. He was in very poor health on his return. From that date until October he devoted as much time as he was physically able to devote to his business as general manager of the New Departure Manufacturing Co. Some days he would be at his office only a short time. On other days he was unable to be at his office at all. Whereas prior to 1932 he had devoted some time to the purchase and sale of securities, in 1932 he was unable to

devote any substantial time to such an activity. He carried no marginal accounts or any outside accounts. During 1932 the total time spent by the petitioner in connection with his investments was not more than about one day. In October 1932 he was obliged to go to a hospital, where he remained until December 27, 1932. While in the hospital he underwent major operations. About the middle of December, while in the hospital and after a discussion with his attorney, he advised his secretary that he desired to accumulate cash for the purpose of paying estate and inheritance taxes which would be payable in case of his death. Upon his order the secretary sold a large number of his shares in December. Upon the sale of these securities the petitioner suffered a loss of $601,178.73. As a result of the sale of securities the petitioner had on hand at the end of 1932 cash in the amount of $1,255,623.52.

In his income and profits tax return for 1928 the petitioner claimed a capital net gain. In his income and profits tax returns for 1929, 1930, and 1931 he claimed capital net losses. The respondent determined deficiencies due from the petitioner for certain of the years 1928 to 1931. These claims were settled by compromise, the respondent holding that the petitioner was a trader in securities during those years.

In 1932 the petitioner purchased small amounts of securities, among which were shares of stock of the Aetna Casualty & Surety Co., New Departure Manufacturing Co., Miami Jockey Club preferred, Young Spring & Wire Co., Connecticut Power Co., Springfield Gas Light Co., Connecticut General Insurance Co., Torrington Co., General Motors preferred and common stock, and Timken Roller Bearing Co. All of the shares of stock purchased by the petitioner in 1932, with the exception of 200 shares of Springfield Gas Light Co. which were sold in 1934, and the New Departure preferred stock which was redeemed by that company, is still owned by petitioner. During his convalescence in the years 1933 and 1934 his purchases of securities were principally of bonds.

On the facts above stated the respondent contends that the petitioner was engaged in a business of buying and selling securities and that the losses sustained by him upon the sale of shares of stock in 1932 were not capital losses but were ordinary losses.

The pertinent provisions of the Revenue Act of 1932 are quoted as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(r) LIMITATION ON STOCK LOSSES.—

(1) Losses from sales or exchanges of stocks and bonds (as defined in subsection (t) of this section) which are not capital assets (as defined in sec-

tion 101) shall be allowed only to the extent of the gains from such sales or exchanges (including gains which may be derived by a taxpayer from the retirement of his own obligations).

SEC. 101. CAPITAL NET GAINS AND LOSSES.

   *        *        *        *        *        *        *

(c) DEFINITIONS.—For the purposes of this title—

   *        *        *        *        *        *        *

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. * * *

The real question in issue here is whether the securities which were sold by the petitioner in 1932 were held by him "primarily for sale in the course of his trade or business." If they were, then the losses sustained upon the sales of the securities were ordinary losses and not capital losses.

Although the petitioner had large holdings of shares of stock in many corporations, the evidence all indicates that he was not, so far as the year 1932 is concerned, an active trader in the market. He did no trading on margin in 1932. The principal reason for making sales of securities during the taxable year was to accumulate cash for the payment of taxes that he knew would be payable by his estate after his death. There is no evidence that the petitioner carried on a business of buying and selling securities during the taxable year. He devoted almost no time during the year to a consideration of the purchase and sale of securities. Both purchases and sales of securities were through brokers. The petitioner had no clientele. He did not hold any securities out for sale to the public. In *Francis M. Weld*, 31 B. T. A. 600, it appeared that the taxpayer was a member of a stock brokerage firm engaged in the business of buying and selling securities. Independently of such business he bought and sold securities on his own account. In 1930 he sold securities which he had owned and held for more than two years. In that case we held that such securities were not held "primarily for sale in the course of his trade or business", within the meaning of section 101 of the Revenue Act of 1928, and that the gain from the sale constituted capital net gain. In the course of our opinion we said:

We are of opinion that a professional man, such as a lawyer or a doctor, who invests his surplus income in the purchase of stocks or other property with an idea of sale at a future date at a profit is not ordinarily to be regarded as holding such shares primarily for sale in the course of his trade or business. We think that the same observation applies to the petitioner at bar. He was not engaged as an individual in a trade or business of buying and selling securities; consequently, he could not be regarded as holding them primarily for sale in the course of his trade or business.

The facts in the proceeding at bar are even more favorable to the contentions of the petitioner. He had no brokerage business such as Weld had. This petitioner was an industrialist. He had a large estate which it was necessary for him to keep invested for income purposes. The investment of his money was not the carrying on of a trade or business within the contemplation of the statute. Cf. *Roger* v. *United States*, 41 Fed. (2d) 65; *Taylor* v. *Commissioner*, 76 Fed. (2d) 904.

During the year 1932 the petitioner made charitable contributions in the amount of $8,150. At the hearing of this proceeding counsel for the respondent moved:

* * * that if the Board holds that the losses from the sale of securities in the amount of $601,178.72 is [*sic*] deductible in computing net income for 1932, then in that event such amount should be excluded from net income for purposes of determining the amount allowable as a deduction for charitable contributions. The result would be that the whole amount of $8,150.00, allowed as charitable contribution deductions, should be eliminated as a deductible item.

In view of the ruling of the Board upon the main point in issue the claimed deduction for charitable contributions will be limited to 15 percent of the corrected net income of the petitioner.

*Judgment will be entered under Rule 50.*