Henry B. Twombly v. Commissioner.
Twombly v. Commissioner
Docket No. 4870.
United States Tax Court
1945 Tax Ct. Memo LEXIS 196; 4 T.C.M. (CCH) 531; T.C.M. (RIA) 45170; May 16, 1945
Henry B. Twombly, pro se. Henry C. Clark, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: The respondent has determined a deficiency of $648.72 in petitioner's income tax for 1941. Petitioner alleges that in so doing the respondent erred in disallowing a capital loss deduction of $1,733.33 on the sale of a painting which he acquired by gift from an uncle in 1917. [The Facts] The essential facts can be stated briefly. Petitioner is an attorney engaged in the practice of law in New *197 York City. His residence is at Summit, N.J. He filed his income tax return for 1941 with the collector of internal revenue for the fifth district of New Jersey. The painting in question was believed by petitioner to be an original, or valuable reproduction, of "Old Kneebone" a portrait by John Opie, a well-known English artist of the late eighteenth and early nineteenth centuries. It was purchased for an undisclosed price by petitioner's uncle, Cornelius C. Bancroft, in 1875 in Calcutta, India, where he served as United States Consul and also conducted an export and import business. In 1917 Bancroft left the painting in the custody of Mr. and Mrs. Henry Van Wagenen, of Morristown, N.J., with the understanding that upon the death of the survivor of them it would go, in succession, either to petitioner or to one of two other named surviving nephews of Bancroft. Shortly after Bancroft's death in 1920 Mr. Van Wagenen gave petitioner a typewritten statement dated "March - 1917," which reads as follows: "About 1875, Mr. C. C. Bancroft found this painting - unframed, rolled up and packed away among a lot of rubbish - in the Bazaar in Calcutta. Oil paintings were scarce in Calcutta, *198 owing to the climate, which was apt to spoil them. Mr. Bancroft cleaned off some of the dirt which incrusted the canvas, and became convinced that it was valuable, but the native shopkeeper put so high a price upon it that he declined to purchase it. Later, however, he bought it and had it sent to his brother-in-law, Mr. Bailey, in Boston. Mr. Bailey obtained from Dall & Richards the name of a man to whom he intrusted the task of restoring it, which he successfully accomplished. Dall & Richards valued it at from $5000 to $7000. It is not known positively who the artist is, but it is supposed to be the work of John Opie (1761-1807) - at least artists have considered it to be in his style - and from reference to and descriptions of his work, it is conjected to be a portrait either of the artist himself or, more probably, of his father. "Because of my great admiration of this picture, my friend Mr. Bancroft has intrusted it to the custody of Mrs. Van Wagenen and me, as long as either of us lives, with the condition that upon the death of the survivor of us, said picture shall go back, in the order of succession named by him, to his nephews, Henry B. Twombly, Alexander H. Twombly or *199 Howland Twombly, in case any of them are living; - the picture to become our property only in case of the death of all three nephews named above, so that although our wills, in providing for th carrying out of Mr. Bancroft's wishes, read 'I give and bequeath,' we really have no ownership in the picture if any of the above named are living, but are only custodians thereof, and Mr. Bancroft especially stipulated in giving us the picture, that I was to incur no responsibility to any of those to whom it was to go after the death of both of us, no matter what happened to it, and even insisted that I was not to add to my insurance because it was put in our house. "I have had this picture looked at by an expert, who believes that it is an Opie. He says unhesitatingly that if it is only a copy it is worth $5000, but if it is an original, as he firmly believes it is, it is worth at least $10,000. As Mr. Bancroft, however, insisted that I go to no expense in the matter, I have not gone any further nor had the expert go to the labor of making sure." Mr. Van Wagenen died on April 26, 1940, having been predeceased by Mrs. Van Wagenen, and soon thereafter the painting was delivered to petitioner *200 as his property. Petitioner had no room for it in his home - he had many other such paintings at the time - and decided to sell it. An artist to whom the matter was referred appraised it at a value of $2,500. He engaged the artist to clean and prepare it for sale and paid the artist $100 for his services. He then turned the picture over to M. Knoedler & Co. of 14 East 57th Street, New York City, for sale. After a few months that firm advised the petitioner to have the painting sold at auction and, on October 6, 1940, petitioner delivered it to Parke-Bernet Galleries, Inc., 30 East 57th Street, New York City, to be sold at their next sale of paintings which was to be held on January 17, 1941. Accordingly, the painting was listed in a printed catalogue of the sale to be held on that date. It was described in the catalogue as "Old Kneebone" by John Opie. On the evening of January 17, 1941, it was sold to the highest bidder for $30. The expenses of sale equalled that amount. In his return for 1941, petitioner claimed a net loss on the sale of $2,600 and a deductible long-term capital loss of $1,733.33 (66 2/3 percent of $2,600). The respondent disallowed the deduction, stating in his *201 deficiency notice that the loss was not incurred in a transaction within the provisions of section 23 (e) (2), Internal Revenue Code. Section 23 (e) (2) authorizes the deduction by individual taxpayers of losses sustained during the taxable year and not compensated for by insurance or otherwise "if incurred in any transaction entered into for profit, though not connected with the trade or business." The deduction allowable is subject to the applicable capital loss provisions of the statute, section 117, Internal Revenue Code. In Juliet P. Hamilton, 25 B.T.A. 1317, the taxpayer acquired by specific bequest under the will of her father, J. Pierpont Morgan, a painting by Thomas Gainsborough, which was listed in the deceased's estate at a value of $100,000. About 10 years later, in 1926, the taxpayer sold the painting for $73,300 and in her return for that year claimed that she sustained a capital loss of $26,700, of which $3,337.50 (12 1/2 percent of $26,700) was deductible under section 208 (c) of the Revenue Act of 1926. We disallowed the deduction for the reason that the loss did not result from a transaction entered into *202 for profit. The petitioner has failed to show what his basis for gain or loss on this picture was. This is so whether his basis was the fair market value of the picture at the time his uncle gave it away, or at the time it came into the possession of the petitioner. Immediately after the picture came into the possession of the petitioner, he spent $100 to have it cleaned and prepared for sale. We think this is sufficient indication that insofar as the petitioner was concerned the transaction was entered into for profit. The picture was sold for $30, which only equalled the auctioneer's charge. The only loss which the petitioner has proven is $100. This amount is deductible under section 23 (c) (2), Internal Revenue Code. Decision will be entered under Rule 50.