R. Foster Reynolds v. Commissioner.
Reynolds v. Commissioner
Docket No. 4059.
United States Tax Court
1945 Tax Ct. Memo LEXIS 108; 4 T.C.M. (CCH) 837; T.C.M. (RIA) 45276; July 31, 1945
Harold E. Staples, Esq. and Colin Mac R. Makepeace, Esq., 1030 Hospital Trust Bldg., Providence 3, R.I., for the petitioner. Charles P. Reilly, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: Respondent determined a deficiency of $610.50 in petitioner's income tax for 1940. This resulted from the disallowance of a deduction of $1,500 taken on the return as a loss from the sale of property other than capital assets. The petitioner claimed the loss as resulting from the sale for $3,500 of a diamond necklace inherited from his aunt and valued for estate tax and state inheritance tax purposes at $5,000. The facts are in part stipulated and in part found from petitioner's testimony. The only issue is the proper treatment of the amount claimed as a loss. All adjustments indicated in the notice of deficiency are accepted by petitioner except the disallowance of this item. Findings of Fact Petitioner *110 is an individual, a citizen of the United States, and resides in Providence, Rhode Island. He filed his Federal income tax return for the year 1940 with the collector of internal revenue for Rhode Island. Petitioner's aunt, Carolyn de Faucigny Lucinge, an American citizen, died on November 2, 1936, possessed of properties situated part in the United States and part in France. Among those properties were works of art, paintings, personal properties contained in two residences in France, and certain items of jewelry, one such item being a platinum and diamond chain or necklace. The Sixth clause of her will provided: "SIXTH * * * I also give and bequeath to my said nephew. Reuben Foster Reynolds, all my clothing, jewelry, household furniture, ornaments, pictures, works of art, books, linens, automobiles and other articles of personal or household use or adornment not otherwise disposed of by me. I request, however, that my sister Grace M. Reynolds, shall, if she so desires, have the use and possession of all or any of said articles during her lifetime." On February 11, 1937, the jewelry of the decedent was appraised as of the date of her death as being of an aggregate value of *111 $523,477.48 for purposes of the Rhode Island inheritance and transmission taxes. The mentioned chain or necklace was included therein at an appraised value of $5,000. The appraisal and valuation were accepted by the Rhode Island tax authorities and tax was paid on the basis thereof. The executors having elected, for Federal estate tax purposes, to include property in the gross estate of the testatrix at values one year after death, the chain or necklace was not appraised for such purposes as of the date of death, but was included in the gross estate returned at a value of $5,000 as of one year after the date of death and such valuation was accepted by the Commissioner on final Federal estate tax audit. The jewelry was stored until December 1, 1937, in the Safe Deposit Department of the Rhode Island Hospital Trust Company, Providence, Rhode Island, in the name of petitioner and Joseph F. Duffy, as executors of the decedent's will. From and after December 1, 1937 to June 14, 1938, the jewelry remained in the same safe deposit box, but the box was in petitioner's individual name. Petitioner made three trips to France to dispose of the properties there left to him under his aunt's will. *112 On or about June 14, 1938, petitioner placed ten pieces of the jewelry inherited from his aunt, including the mentioned chain or necklace, with Cartier, Inc., New York, New York, for sale. These ten pieces had been appraised at more than $400,000. Petitioner entered into contracts with Cartier which provided that Cartier was to offer the articles of jewelry for sale for the account of petitioner at prices stated; that when an article was sold Cartier was to retain 20 percent of the sales price as compensation for its services and return the balance to petitioner; that all Federal and State sales taxes were to be borne by the customer; that in the event Cartier obtained from a prospective purchaser an offer for any article at a lower price than that specified Cartier was to transmit the offer to petitioner for consideration of its acceptability to him; and that if a sale be effected at such lower price Cartier was to receive 20 percent of such price as its commission. The contract was to remain in effect for one year, but it was renewed from time to time. The scheduled sales prices of the ten pieces of jewelry exceeded $450,000. The prices were fixed by conference between Cartier, *113 Inc., and petitioner and were based on their appraised value. From time to time petitioner conferred or communicated by letter, telegram or telephone with Cartier. One piece of the jewelry was sold prior to 1940. At least one piece was broken up or remounted to facilitate sale of the stones. Efforts were made by Cartier to effect a sale of the chain or necklace, but such efforts having been unsuccessful, the petitioner later authorized the sale by Cartier of the chain or necklace for $3,500 net to petitioner and the item was sold on or about October 18, 1940, and petitioner received that sum. At least one other piece was sold since 1940, and unsold pieces have continued to be offered by Cartier for sale. The jewelry placed with Cartier was at no time used by petitioner or any member of his family. The chain or necklace was the only piece of jewelry which petitioner sold in 1940. Jewelry inherited by petitioner from his aunt, other than the pieces placed with Cartier for sale, has been used by petitioner's mother or by his wife. During 1940 petitioner was president and treasurer and owner of all the stock of a corporation which owned the Bretton Woods Hotel, a summer hotel located *114 in New Hampshire. In the summer of 1940 petitioner devoted part of his time to the operation of the hotel. Petitioner, in the sale of jewelry inherited from his aunt, was not engaged in trade or business. The sale of the diamond chain or necklace effected in 1940 was a sale in a transaction entered into for profit. Opinion Petitioner inherited from his aunt certain jewelry, including a diamond and platinum chain or necklace, which item he sold in 1940. He contends that the value of the necklace or chain on November 2, 1936, the date of his aunt's death, was $5,000, that such amount is the cost or basis of this item to him, that by the sale of the necklace in 1940 for $3,500 (net to him) he incurred a loss of $1,500 on the sale of a non-capital asset, and that such loss was properly deducted on his return for 1940. He argues that the deduction of the amount of the loss is allowable under section 23(e)(1) [1] of the Internal Revenue Code as a loss incurred in trade or business, or in the alternative, that a deduction is allowable under section 23(e)(2) as a loss incurred in a transaction entered into for profit, though not connected with his trade or business. *115 Respondent takes the position that any loss incurred by petitioner was a personal loss and not a loss incurred in trade or business, and, further, that the transaction was not a transaction entered into for profit within the scope of section 23(e)(2) of the Code. Petitioner testified that following the death of his aunt in 1936, his business has been primarily the conversion of the non-income-producing assets of his aunt's estate, as they came into his possession, into income-producing assets, and the maintenance of his personal affairs, except within the last two or three years when he has been serving in the Coast Guard. In 1940 he was president and treasurer *116 of the Bretton Woods Hotel, of which he owned all the stock, and devoted part of his time to the operation of the hotel. He inherited from his aunt jewelry of the appraised value of approximately $523,000, works of art, paintings, and personal properties contained in two residences in France. He was co-executor of his aunt's will. He made three trips to France to dispose of the properties there. Approximately $75,000 was paid in taxes on the legacies left him under the will. In 1938 he placed with Cartier, Inc., ten pieces of the jewelry left him under the will, such pieces having an appraised value of more than $400,000. He entered into contracts with Cartier for the sale of these items for a commission of 20 percent of the sale prices fixed in the contracts. Cartier displayed the jewelry in its salesrooms and showed it at special exhibitions and showed pieces to prospective customers. Offers of less than the contract sale prices were communicated to petitioner for consideration. From time to time petitioner conferred or communicated by letter, telephone or telegram with Cartier. One piece of the jewelry was sold prior to 1940, one piece in 1940, and one or more pieces since 1940. *117 Petitioner asserts that he established and followed a systematic plan involving an active campaign of sales effort to bring a sale of this part of the inherited jewelry. He argues that his personal attention to the sale of the property and his participation in the efforts to effect sales of the jewelry through Cartier establishes the fact that he was engaged in a trade or business in this respect. Whether a particular activity in which a taxpayer engages constitutes a trade or business depends upon the facts in the case. Higgins v. Commissioner, 312 U.S. 212 (1941), affirming the decision of the Circuit Court of Appeals for the Second Circuit, 111 Fed. (2d) 795, which affirmed the decision of the Board of Tax Appeals, 39 B.T.A. 1005. That the taxpayer is engaged in one business does not foreclose the possibility of his being simultaneously engaged in another, R. J. Richards, 30 B.T.A. 1131, affirmed, Richards v. Commissioner, 81 Fed. (2d) 369. The size of the activity is not determinative. Higgins v. Commissioner, supra. *118 However, isolated transactions do not amount to a business. Rogers v. United States, 41 Fed. (2d) 865; Mente v. Eisner, 266 Fed. 161,11 A.L.R. 496. Yet very slight activity will constitute doing business where the motive is profit. Roney v. Commissioner, 67 Fed. (2d) 165, affirming the decision of the Board of Tax Appeals, 26 B.T.A. 1213. The personal attention to the activity is not decisive and the fact that an activity is conducted through agents or employees does not take it out of the category of a business. Mertens', Law of Federal Income Taxation, section 22.08; Welch v. Commissioner [Solomon], 99 Fed. (2d) 41; Commissioner v. Boeing, 106 Fed. (2d) 305, certiorari denied 308 U.S. 619, reversing the decision of the Board of Tax Appeals, 37 B.T.A. 178; Ehrman v. Commissioner, 120 Fed. (2d) 607, certiorari denied 314 U.S. 668, affirming the decision of the Board of Tax Appeals, 41 B.T.A. 652. The purpose for which property was acquired and the motives which prompted its sale are not determinative of the question. Nor is it *119 decisive whether the motive is to liquidate one's investment or to make money, Ehrman v. Commissioner, supra; Commissioner v. Boeing, supra, R. J. Richards, supra.In the Boeing case, the court laid down the test, p. 309: From the cases it would appear that the facts necessary to create the status of one engaged in a "trade or business" revolve largely around the frequency or continuity of the transactions claimed to result in a "business" status. In Willoughby H. Stuart, Jr., 32 B.T.A. 573, 580, affirmed, Stuart v. Commissioner, (CCA-1) 84 Fed. (2d) 368, certiorari denied 299 U.S. 575 (1936), the Board said: * * * we think the term "trade or business" used in section 23 (e) (1) of the Revenue Act of 1928 likewise refers to an "established" trade or business; otherwise, there would be no reason for section 23 (e) (2). Where a taxpayer seeks to deduct from income an amount claimed as a loss incurred in trade or business it must be shown that such loss was sustained in the actual business of the taxpayer *120 as distinguished from isolated personal transactions. See also Mente v. Eisner, supra; and Thompson Lumber Co., 43 B.T.A. 726. In De Witt Page, 34 B.T.A. 590, the taxpayer owned in excess of $5,000,000 in common and preferred stocks. In holding that a loss incurred in 1932 on the sale of stock was a capital loss and that the stock was not held primarily by the taxpayer for sale in the course of his trade or business, the Board said, p. 593: There is no evidence that the petitioner carried on a business of buying and selling securities during the taxable year. He devoted almost no time during the year to a consideration of the purchase and sale of securities. Both purchases and sales of securities were through brokers. The petitioner had no clientele. He did not hold any securities out for sale to the public. * * * this petitioner was an industrialist. He had a large estate which it was necessary for him to keep invested for income purposes. The investment of his money was not the carrying on of a trade or business within the contemplation of the *121 statute. In Higgins v. Commissioner, supra; the Supreme Court held that the control and management of the taxpayer's investments in stocks and bonds was not carrying on a business, although his real estate activities in renting buildings were conceded to be business activities warranting the deduction of expenses incurred therein. We think the conclusions reached in the Stuart case, supra, the Page case, supra and the Higgins case, supra, are applicable here. The petitioner owned considerable property, the management of which took a substantial part of his time. He acquired additional property under his aunt's will. He did not wish to retain all the inherited property in the form in which it came to him. He chose instead to liquidate a part of it in order to invest the proceeds in income-producing assets. In selling this property he did not hold himself out to the public as being engaged in a business, he did not purchase like property for purposes of resale, he had no place of business, as such, and the frequency or continuity of the transaction were, in our opinion, not such as to warrant the conclusion that he had acquired a business status in this respect. The *122 essential point is that this was merely a conversion of his property from one form to another. It was a personal matter to him; not a trade or business. We think that in the management or liquidation of his own properties, including those acquired under his aunt's will, petitioner was not engaged in a trade or business within the meaning of section 23(e)(1) of the Code. The petitioner argues that the efforts of Cartier's to sell the jewelry, involving the efforts of fifteen or more persons, and including advertising; exhibiting, and negotiating with possible purchasers, would have been a business if carried on by Cartier for its own account and is no less so because carried on for the account of petitioner. Cartier is engaged in the jewelry business on its own account, regardless of its contract with petitioner. We do not agree that the owner of property placed with an agent for sale is thereby engaged in the same business as the agent. See DeWitt Page, supra.
Petitioner cites Commissioner v. Boeing, supra, in which the taxpayer who owed timber lands and who engaged *123 lumber companies to cut and sell logs from the land, paying them two-thirds of the gross proceeds was held to be engaged in a trade or business. In that case the Circuit Court of Appeals for the Ninth Circuit concluded that the sale of several million feet of timber indicated a continuous course of dealing and that the evidence did not support the finding of the Board of Tax Appeals that Boeing was not engaged in a trade or business. We do not consider the Boeing case applicable here. Petitioner cites Reis v. Commissioner, 142 Fed. (2d) 900, affirming the memorandum decision of this Court, June 4, 1943, [2 TCM 216], in which it was held that the taxpayer who had acquired assets of a mining corporation, of which he was a stockholder, at a foreclosure sale and who sold portions of the equipment by circulating lists thereof to prospective purchasers held such equipment for sale in the ordinary course of trade or business and that such equipment was not a capital asset. Petitioner also cites Roney v. Commissioner, supra, holding that whiskey manufactured by the taxpayer and stored for more than two years was stock in trade and the gain from *124 the sale thereof was taxable as ordinary income and not capital gain under the Revenue Act of 1928. Petitioner also cites a number of other cases dealing with the sale of real estate in which it was held that the taxpayers were selling property in the course of a trade or business. We do not consider these cases, involving the improving and subdivision of real estate and the sale thereof, or the sale of commercial property purchased or manufactured for sale as applicable with respect to the instant case. Petitioner's alternative contention is that the sale of the chain or necklace resulted in a loss in a transaction entered into for profit within the intent of section 23(e)(2) of the Code. His testimony demonstrates that he had no intention of using the particular items of jewelry placed with Cartier and had always intended to dispose of them at the best possible prices. In Estelle G. Marx, 5 T.C. 173, we held that a loss on the sale of an inherited yacht was sustained in a transaction entered into for profit and deductible as such. The measure of the loss was the difference *125 between the valuation determined by the Commissioner for estate tax purposes, less depreciation, and the amount realized from the sale. In that case we pointed out that the petitioner engaged in no conduct inconsistent with an intention to realize as soon as possible and to the greatest extent possible the primary value of the yacht. A similar conclusion was reached in N. Stuart Campbell and Elsie Aldrich Campbell ( Husband and Wife), 5 T.C. 272. See also Robert W. Williams, Executor, 1 B.T.A. 1101, and T.B.R. 35, C.B. 1 (1919) p. 122. We think the same conclusion is applicable here and that petitioner sustained a loss in a transaction entered into for profit. There is no evidence that the petitioner here made or intended to make any personal use of the jewelry, which use or intent would put the transaction in a different category. Edgar M. Carnrick, 21 B.T.A. 12; Winkler, et al. v. Nunan, 143 Fed. (2d) 483, affirming 2 T.C. 735; Juliet P. Hamilton, 25 B.T.A. 1317. The chain or necklace was a capital asset within the scope of section 117 (a)[2] of the Code. Since we conclude that the loss was not *126 incurred in a trade or business, it follows that the jewelry was not held by petitioner primarily for sale to customers in the ordinary course of his trade or business. Nor was it stock in trade or property of a kind which would properly be included in the inventory of petitioner if on hand at the close of business of the taxable year. It is obviously not subject to allowance for depreciation. The taxpayer held the property for more than 24 months. It follows that the allowable loss under section 117(b) of the Code is fifty percent of the loss incurred. Under section 113(a)(5) of the Code the basis of property transmitted at death is the fair market value at the time acquired from the decedent. Under section 19.113(a)(5)-1, of Regulations 103, as amended by T.D. 5230 ( C.B. 1943, 299, 305), the value of property as appraised for the purposes of Federal estate taxes shall be deemed the fair market value at the time of acquisition. While such an appraisal, even though accepted by the Commissioner for estate tax purposes, is not binding upon the Commissioner as the basis for determining *127 gain or loss, Elizabeth W. Boykin, 16 B.T.A. 477, it is evidentiary. No evidence has been adduced to show that the appraisal value of $5,000 placed upon this item of jewelry as of the date of death of petitioner's aunt is excessive. Since petitioner derived only $3,500 from the sale, his loss amounts to $1,500. *128 Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *.↩
2. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions - As used in this chapter: (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1); * * * * *
(b) Percentage Taken Into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income; 100 per centum if the capital asset has been held for not more than 18 months; 66 2/3 per centum if the capital asset has been held for more than 18 months but not for more than 24 months; 50 per centum if the capital asset has been held for more than 24 months.↩