Thora Scott Ronalds v. Commissioner.
Ronalds v. Commissioner
Docket No. 2384.
United States Tax Court
1946 Tax Ct. Memo LEXIS 79; 5 T.C.M. (CCH) 812; T.C.M. (RIA) 46224; September 20, 1946
Oscar R. Ewing, Esq., 1 Wall St., New York, N.Y., for the petitioner. Homer Benson, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This controversy involves an income tax deficiency in the amount of $92,175.60 for the calendar year 1941, only a part of which is in controversy. The sole issue is whether petitioner is entitled, in computing net *80 taxable income, to either an ordinary or a capital loss deduction on the sale of two separate residentialproperties. The case was submitted upon a stipulation of facts, oral testimony and exhibits. The facts as stipulated are so found. Other facts are found from the record. Findings of Fact Petitioner is an individual, whose address is 314 Scott Building, Erie, Pennsylvania. Her income tax return for the taxable year was filed with the collector of internal revenue for the 23rd district of Pennsylvania at Pittsburgh, Pennsylvania. Petitioner is the daughter of Thora Scott Strong and the granddaughter of Annie Wainwright Scott Strong. At the death of the latter, on May 19, 1928, she owned and resided at 109 West Sixth Street, Erie, Pennsylvania. On such date Thora Scott Strong and her daughter, petitioner, resided at that address and had no other residence. Petitioner had resided at 109 West Sixth Street since she was an infant. This residence, constructed about 1893 of brownstone and Roman brick, contained 38 rooms, 11 baths and 4 or 5 lavatories. On the same premises was another building, erected originally as a stable but later used as a garage. On an adjoining piece of property, *81 also owned by petitioner's grandmother, were two small dwellings, one brick and one frame, which were known as 618-624 Peach Street and used to house servants. Under the will of Annie Wainwright Scott Strong, her residence at 109 West Sixth Street, the stable, and all land appurtenant thereto were devised to trustees for the joint use and benefit of her daughter and petitioner until three years after the marriage of petitioner or upon her attaining the age of 25 years. Upon the termination of the trust the property was devised to petitioner and her mother as tenants in common. Petitioner did not marry, but reached the age of 25 on December 14, 1932. On April 13, 1939, petitioner's mother died and under her mother's will petitioner acquired the remaining undivided half interest. Petitioner acquired a one-third undivided interest in the premises known as 618-624 Peach Street under the will of her granmother. On May 27, 1929, petitioner acquired by gift from her grandfather another undivided one-third interest in the last mentioned property, and by the will of her mother she acquired the remaining undivided one-third interest. Both the 109 West Sixth Street and 618-624 Peach Street *82 properties were used and occupied by petitioner as a single unit. In December 1933, petitioner and her mother moved from 109 West Sixth Street to 4225 State Street, which latter property her mother had leased and later purchased as their personal residence. Petitioner acquired title to such premises under the will of her mother. Thereafter she occupied the premises as her personal residence until December 1939 when she moved to property known as "The Cabin". At the time petitioner and her mother moved from the 109 West Sixth Street property they had no intention of ever residing there again. Petitioner and her mother did not at any time consider a separate sale of the two Peach Street dwellings apart from 109 West Sixth Street because they thought it would be much better to sell them all together. It would have been unwise from a business standpoint to sell the Peach Street properties separately from 109 West Sixth Street because it would have adversely affected the salability of 109 West Sixth Street. During the time the 109 West Sixth Street property was held by the trustees, and prior to the time petitioner and her mother acquired the legal title to such property, they had negotiations *83 with the Erie Club of Erie, Pennsylvania, with a view to the club's purchasing the property. The offering price was $300,00 or $350,000. In the Winter of 1938 and 1939, a Mr. Rodarmor, who looked after the business affairs of petitioner and her mother, showed the 109 West Sixth Street property to the Sisters of Mercyhurst College and offered, on behalf of petitioner and her mother, to sell the 109 West Sixth Street property only for $225,000. On June 1, 1938, Mr. Rodarmor, received a letter from Harper & Russell, real estate brokers in Erie, offering $100,000 on behalf of the University of Pittsburgh for 109 West Sixth Street, but the offer was rejected. It was generally known among real estate dealers in Erie that the properties here involved were for sale or rent. No real estate broker was give exclusive authority to negotiate such sale or rental. During the years 1930 through 1941, petitioner was the owner, in whole or in part, of a number of other pieces of property in and about Erie, Pennsylvania. During each of said years she derived rentals ranging from a low of $7,731.97 in the year 1932 to a high of $17,063.56 in 1940 from some or all of the following six properties. *84 1. Carter Farm - about 219 acres with buildings and improvements. 2. Lawrence Farm - about 213 acres with buildings and improvements. 3. Rolling Mill Tract. 4. Scott Building. 5. 724 Peach Street and 116 West Eighth St. 6. Tracy Farm - about 163 acres with buildings and improvements. In addition, during the same years, petitioner owned, in whole or in part, the Cedars Tract and the Kellogg Street lots which consisted of vacant land from which no income was obtained. From April 13, 1939, through the year 1941, petitioner was the owner of 3028 Holland Street. Rentals received for this property were $196, $444, and $144 for the years 1939, 1940 and 1941, respectively. On April 13, 1939, petitioner acquired the French Road House, from which she received rentals of $162 in 1940 and $234 in 1941. In October 1943, petitioner sold 22 acres of the Lawrence Farm and the remaining 191 acres in November 1945. In November 1943, 3028 Holland Street was sold. In March 1945, 724 Peach Street and 116 West Eighth Street were sold. A parcel of the Tracy Farm, consisting of 3.363 acres was sold in November 1945. During the period 1930 through 1941, all of the properties listed above were *85 held by petitioner for sale or rent. All of such listed properties were inherited either from petitioner's mother or her grandmother, and none of them were purchased by petitioner for the purpose of renting or selling. Immediately following the death of petitioner's grandmother, the general supervision of petitioner's and her mother's property was under Mr. John S. Owens, who died in the Autumn of 1931. He was succeeded by Mr. Charles J. Rodarmor, who continued in that capacity until June 1939, and Mr. Oscar R. Ewing has performed the same function since that time. Petitioner also employed regularly three people in Erie to assist in the management of her business affairs and real estate, who attended to bills and collections and all bookkeeping. In addition, for a time, petitioner employed one Kuntz of the National Bank and Trust Company of Erie to push sales of petitioner's real estate. Petitioner's former residences at 109 West Sixth Street and 618-624 Peach Street, and at 4225 State Street, had not been rented or converted to the production of income prior to the dates of their sale. The premises 109 West Sixth Street and 618-624 Peach Street were sold as a unit on March 15, 1941. The *86 gross proceeds of sale were $50,000, the expenses of sale were $1,817, and the net proceeds were $48,183. The proper allocation of those net proceeds between the premises at 109 West Sixth Street and those at 618-624 Peach Street is as follows: 109 West Sixth Street
$34,980
618-624 Peach Street
13,203
$48,183 The proportions of the net proceeds thus attributed to each of these premises, which were properly allocable to land and buildings, respectively, were as follows: Land
Buildings
Total
109 West Sixth Street
$16,440.60
$18,539.40
$34,980
618-624 Peach Street
11,090.00
2,113.00
13,203
Total
$27,530.60
$20,652.40
$48,183
The fair market values of the one-half undivided interests in the premises 109 West Sixth Street, as of May 19, 1928, and April 13, 1939, respectively, were as follows: One-half undivided interest, as of
May 19, 1928
$106,443.75
One-half undivided interest, as of
April 13, 1939
34,000.00
Total
$140,443.75 The proportions of the fair market values of these one-half undivided interests, properly allocable to land and buildings, respectively, were as follows: Land
Buildings
Total
One-half undivided interest, as of May 19, 1928
$35,000
$71,443.75
$106,443.75
One-half undivided interest, as of April 13, 1939
16,000
18,000.00
34,000.00
Total
$51,000
$89,443.75
$140,443.75
*87 The fair market values of the two-thirds and one-third undivided interests in the premises 618-624 Peach Street, as of May 19, 1928, and April 13, 1939, respectively, were as follows: Two-thirds undivided interest, as of
May 19, 1928
$21,583.33
One-third undivided interest, as of
April 13, 1939
4,583.33
Total
$26,166.66 The proportions of the fair market values of these two-thirds and one-third undivided interests, properly allocable to land and buildings, respectively, were as follows: Land
Buildings
Total
Two-thirds undivided interest, as of May 19, 1928
$18,250.00
$3,333.33
$21,583.33
One-third undivided interest, as of April 13, 1939
3,833.33
750.00
4,583.33
Total
$22,083.33
$4,083.33
$26,166.66 The fair market value of a one-third undivided interest in the premises 618-624 Peach Street, as of May 27, 1929, was $10,791.66. The proportions of the fair market value of the aforesaid one-third undivided interest, properly allocable to land and buildings, respectively, were as follows: Land
Buildings
Total
$9,125
$1,666.66
$10,791.66
No depreciation has been allowed to the petitioner with respect *88 to the premises 109 West Sixth Street and 618-624 Peach Street for the years 1928 to 1941, inclusive. The estimated average useful life of improvements on 109 West Sixth Street, as of May 19, 1928, was 40 years and of improvements on 618-624 Peach Street, as of May 19, 1928, was 25 years. The applicable average useful life of the improvements on each of the above premises for any later date than May 19, 1928, to the date of sale in 1941 would be the number of years set forth above less the amount of time which had elapsed between May 19, 1928, and such later date. On January 28, 1941, petitioner sold a portion of the premises 4225 State Street. The gross proceeds of sale of the portion of the premises 4225 State Street sold on January 28, 1941, were $23,000, the expenses of sale were $915.30, and the net proceeds were $22,084.70. The proportions of the net proceeds, properly allocable to land and buildings, respectively, were as follows: Land
Buildings
Total
$7,199
$14,885.70
$22,084.70
The fair market value of the premises 4225 State Street as of April 13, 1939, was $30,000. The fair market value, as of April 13, 1939, of the portion thereof which the *89 petitioner sold in 1941 was $28,300. The proportions of the fair market value as of April 13, 1939, of the portion of the property which the petitioner sold in 1941, properly allocable to land and buildings, respectively, were as follows: Land
Buildings
Total
$8,500
$19,800
$28,300
No depreciation has been allowed to the petitioner with respect to the premises 4225 State Street for the years 1939 to 1941 inclusive. The estimated average useful life of the improvements on premises 4225 State Street as of April 13, 1939 was 40 years. The applicable average useful life of the improvements on 4225 State Street for any later date than April 13, 1939, to the date of sale on January 28, 1941, would be the number of years set forth above less the amount of time which had elapsed between April 13, 1939, and such later date. Petitioner in her 1941 Federal income tax return deducted a loss of $7,833.30 on the sale of the portion of the premises 4225 State Street and a loss of $127,644.08 on the sale of the premises 109 West Sixth Street and 618-624 Peach Street, as losses from sales of noncapital assets. The respondent disallowed these deductions in their entirety. *90 Under date of December 7, 1943, petitioner remitted to the collector of internal revenue, Pittsburgh, Pennsylvania, the sum of $90,750 in payment of 1941 proposed deficiency income tax. Receipt of this remittance was acknowledged by the collector under date of December 10, 1943. Opinion Petitioner, in the taxable year 1941, claimed a deduction of the amount of $135,477.38, as a loss arising from the sale of certain improved real estate. Petitioner contends that such loss was deductible in full as an ordinary loss incurred in a trade or business or, in the alternative, that the losses were capital losses sustained in transactions entered into for profit. [1] The respondent disallowed any deduction on the ground that the real estate involved was composed of two separate residential properties, each of which petitioner was occupying as her residence on the date of acquisition and subsequent thereto, and neither of which was used in a trade or business, rented, or otherwise converted to income-producing purposes prior to their sale in 1941. Unless petitioner was engaged in the real estate business, she is not *91 entitled to a deduction of the full loss sustained upon the sales of the real premises in question, under section 23 (e) (1) of the Internal Revenue Code. Upon consideration of this entire record, we are not convinced that she was so engaged in the taxable year. It thus becomes necessary to consider petitioner's alternative theory that the loss was incurred in a "transaction entered into for profit" within the purview of section 23 (e) (2) of the Code. These premises were acquired by inheritance. Such fact is a neutral one. Estelle G. Marks, 5 T.C. 173. What petitioner did with respect to the property after acquiring it becomes an important factor in determining the character of the transaction. The real estate was residential and not business property. She occupied it as her residence both prior and subsequent to the time she acquired title. This fact, we think, definitely earmarks the premises as residential and individual property in the hands of petitioner. This fact distinguishes the cases of N. Stuart Campbell, 5 T.C. 272, and Estelle G. Marks, supra, relied upon by petitioner. Petitioner having dedicated the property *92 to her personal individual use, some definite act of conversion to a business purpose is necessary before a deductible loss arises upon its disposition. The mere passage of time or extensive but unsuccessful effort to sell or rent will not work a conversion of the premises from an individual use to a transaction for profit. We think the facts presented bring this case within the rationale of such cases as Gevirtz v. Commissioner, 123 Fed. (2d) 707; Phipps v. Helvering, 124 Fed. (2d) 292; Morgan v. Commissioner, 76 Fed. (2d) 390; cert. denied, 296 U.S. 601, and Warren Leslie, Sr., 6 T.C. 488. The respondent properly disallowed any loss deductions resulting from the sale of the realty in question. Petitioner has previously paid the greater part of the determined deficiency; hence Decision will be entered under Rule 50. Footnotes
1. See section 23 (e) (1) and (e) (2), I.R.C.↩