MARGUERITE L. GIORDAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Giordan v. Commissioner
Docket No. 8817-73.
United States Tax Court
T.C. Memo 1976-112; 1976 Tax Ct. Memo LEXIS 290; 35 T.C.M. (CCH) 505; T.C.M. (RIA) 760112; April 12, 1976, Filed E. Terry Warren, for the petitioner. Robert N. Armen, Jr., for the respondent. QUEALY
QUEALY, Judge: Respondent determined deficiencies in income tax due from the petitioner for the taxable year 1969 in the amount of $958 and for the taxable year 1970 in the amount of $1,548. The only issue for decision is whether petitioner is entitled to deduct the expenses incurred (including depreciation) in the rental of a residence at Fort Lauderdale, Florida. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner is an individual whose residence at the time the petition was filed was Ashtabula, Ohio. She filed her Federal income tax returns for the taxable years 1969 and 1970 with the Internal Revenue Service Center in Cincinnati, Ohio. During the taxable years 1969 and 1970, petitioner owned 38 percent and 34 percent, respectively, of the stock of Pinney Dock and Transport Company. She was secretary and assistant treasurer of and office manager *292 for the company. Pinney Dock and Transport Company owned and operated a dock and storage facility in Ashtabula, Ohio. The petitioner devoted her full time to its business and to the business of Ashtabula Stevedore Company, a related company which provided stevedore service. In 1947, Nelson Pinney, petitioner's then husband, and the petitioner acquired a residence located in Fort Lauderdale, Florida. Following the death of Mr. Pinney in October 1967, petitioner became sole owner of this property. The cost of the residence, including improvements through the taxable year 1970, amounted to $34,355, exclusive of land and exclusive of furniture and fixtures. Beginning in 1956, the Fort Lauderdale residence was rented to Pinney Dock and Transport Company. Up until the time of Mr. Pinney's death, the residence was occupied from time to time during the seasonal months by petitioner and her former husband, and by various employees, business associates and shippers who did business with Pinney Dock and Transport Company. Following the death of Mr. Pinney, the residence continued to be rented for that purpose. During the taxable year 1969, petitioner occupied the Fort Lauderdale residence *293 for a twelve-day period. No one accompanied her. During the taxable year 1970, petitioner occupied the residence for periods of twelve and eleven days, respectively. During the last six days of her first 1970 occupancy, John Hruska and Kenneth Carlson, employees of Pinney Dock and Transport Company, also used the residence. During the entire period of her second 1970 occupancy, the company physician, Dr. Veroni, also used the residence. For the taxable years 1956 to 1967, inclusive, petitioner and her husband filed joint income tax returns in which they claimed two-thirds of the expenses attributable to the Fort Lauderdale residence as deductions. For the taxable year 1968, petitioner filed a return as a single person reflecting, as owner of a one-half interest in the property, a loss equal to one-half of the difference between income and expenses attributable thereto. Thereafter, petitioner filed her returns as sole owner. The following amounts were reported in respect of the Fort Lauderdale residence for the taxable years 1963 to 1970, inclusive: Total Deductions
Rentals
Depreciation
(Including
Gain or Year
Paid
Allowed
Depreciation)
(Loss) Reported
1970
$3,250.00
$1,202.00
$5,823.00
[2,573.00)
1969
3,600.00
1,202.00
5,268.00
(1,668.00)
1968
3,300.00 [1]
1,202.00
4,205.00
( 452.00)
1967
3,950.00
801.13
3,533.91
416.09
1966
3,600.00
785.71
2,454.65
1,145.35
1965
3,600.00
1,027.35
3,248.89
351.11
1964
3,600.00
1,428.88
3,422.19
177.81
1963
4,350.00
1,387.29
3,780.73
569.27
*294 In his notice of deficiency the respondent determined that the net loss claimed by the petitioner on account of the rental of the Fort Lauderdale residence during the taxable years 1969 and 1970 was not incurred in connection with property held for the production of income or for investment. OPINION Petitioner and Nelson Pinney, her former husband, owned a residence in Fort Lauderdale, Florida. Nelson Pinney died in October 1967. For some ten years prior thereto, the residence had been rented to Pinney Dock and Transport Company, for seasonal use by various employees, business associates, and others with whom the corporation did business. Nelson Pinney also used the residence from time to time. In their Federal income tax returns, Nelson Pinney and the petitioner allocated one-third of the expenses (including depreciation) of the residence to personal use and two-thirds to the business use which produced the rentals. For the taxable year 1968, the petitioner, as joint owner with the estate of Nelson Pinney, filed a separate return reflecting one-half of the rentals and deductions *295 attributable to the property. For the taxable years 1969 and 1970, petitioner's returns reflected the total rentals, and petitioner deducted the total expenses (including depreciation), resulting in losses in the amounts of $1,668 and $2,573, respectively. Respondent has disallowed the losses claimed by the petitioner on the grounds that the Florida residence did not constitute property held by the petitioner for the production of income or for investment, within the meaning of section 212. [2] In support thereof, respondent relies primarily, if not exclusively, on the fact that the rental of the property resulted in tax losses. Prior to the death of petitioner's husband, the Fort Lauderdale residence was used partly to accommodate employees, business associates, customers, and the like, of Pinney Dock and Transport Company, and partly by Nelson Pinney for his personal use. An allocation of expenses based upon such use was made and seemingly accepted by the respondent. Upon the death of her husband, petitioner became the sole owner of the property. Petitioner must *296 be allowed a reasonable time after the death of her husband and the distribution of the property to her within which to decide whether she would seek another tenant, sell the house, or retain it for her own personal use. During the year 1969, her personal use was minimal. Her former husband's prior use cannot be used to imply petitioner's continued personal use. See Frank A. Newcombe,54 T.C. 1298, 1300 (1970); Mary E. Crawford,16 T.C. 678 (1951); N. Stuart Campbell,5 T.C. 272 (1945). Respondent's determination that the property was not held for investment or for the production of income cannot be sustained on the basis of such personal use of the property by the petitioner. Respondent argues that the rentals paid by Pinney Dock and Transport Company were not sufficient to cover expenses attributable to the property, including depreciation. Therefore, the property was not held for the production of income. If a tax loss alone were sufficient to negate a showing that property is held for the production of income or investment, there would be no need for the so-called "hobby loss" provisions in the Internal Revenue laws. See section *297 270, repealed by section 213(b), Tax Reform Act of 1969, 83 Stat. 571, applicable to taxable years beginning before 1970, and section 183, applicable to taxable years beginning in 1970 and thereafter. [3]
For the years immediately preceding the death of petitioner's husband, the rentals exceeded the expenses allocable to the business use of the Fort Lauderdale residence. A loss resulted only when, following Nelson Pinney's death, petitioner was left as sole owner of a property for which she had little use. Pinney Dock and Transport Company was willing to pay a continuing rental under an agreement which had been in effect for more than ten years. Petitioner cannot be faulted for failing to terminate that agreement immediately upon the death of her husband. *298 Until she saw a better use for the property, her decision to continue the agreement with Pinney Dock and Transport Company does not disprove the fact that with respect to the petitioner the property was held for income or investment. With respect to the taxable year 1969, the fact that the rentals received did not exceed the total deductions allocable to the Fort Lauderdale residence does not provide a basis for disallowing the deduction of the net loss. Petitioner should be allowed a reasonable time within which either to sell, renegotiate the rental, or to seek a new tenant for the residence. Accordingly, the determination of the respondent with respect to the taxable year 1969 is not sustained. With respect to the taxable year 1970, a different situation prevails. By the fall of 1969, it should have been apparent to petitioner that the continued rental of the Fort Lauderdale residence to Pinney Dock and Transport Company at the then existing rate would inevitably result in a cash loss. Furthermore, if the company had been willing to pay the same rental for two-thirds utilization for the property during the life of her former husband, the rent should be increased to reflect the *299 fact that the company would have full utilization of the property. Upon interrogation by the Court, petitioner testified: THE COURT: Let me ask the witness a couple of questions here. Why, since it appears that the house was being used almost exclusively for the benefit of the company, and you weren't even being paid enough to cover your out-of-pocket costs, did you continue to operate this way? THE WITNESS: Well, we're thinking of changing it. THE COURT: I see. I mean, during this period of time? In other words, you knew that it was costing you more than you got in rent, forgetting depreciation, right? THE WITNESS: Right. THE COURT: Why were you willing to do that? THE WITNESS: Well, I guess I wasn't, but it was hard to get anymore for it -- see, anymore rent. THE COURT: Well, did you list it with anybody, or try to get anymore for it? Or, did you figure that you got the advantage because of the company? THE WITNESS: Well, I would say that -- what was the question again? THE COURT: I say, did you try to -- did you offer it for rent any time? THE WITNESS: No, I didn't, because it would interfere with the -- THE COURT: Because it would interfere with the use *300 by the company, right? THE WITNESS: Right. Um hm. It must be presumed, therefore, that in continuing to rent the property to Pinney Dock and Transport Company at the same rentals that prevailed during the life of her former husband, notwithstanding the increased utilization available to the company and the additional costs incurred, the petitioner did not rent the residence with a motive to make a profit. She made no effort to seek out any other tenant. She was willing to "contribute" the loss to the company. The deductions allowable are governed by section 183(a), (b) and (c). [4]
*301 Decision will be entered under Rule 155.
Footnotes
1. In the income tax returns filed for 1968, total rentals were erroneously reported as $3,850.00.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. A proposed prospective amendment to the Internal Revenue Code would provide an additional test for deduction of vacation home expenses. In order to claim deductions in excess of rental income, a taxpayer could not use the residence for personal reasons for more than 5 percent of the period available for rent or for two weeks, whichever is less. See H. Rept. 94-658, to accompany H.R. 10612, 94th Cong., 1st Sess. 162-165 (1975).↩
4. SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule.--In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371 (b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) Deductions Allowable.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) Activity Not Engaged in for Profit Defined.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.↩