HERBERT'S ESTATE et al. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 8500.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 10, 1943.

Decided Dec. 30, 1943.

Raymond F. Garrity, of Washington, D. C. (Walter R. Schoenberg, of Washington, D. C., on the brief), for petitioners.

Harry Baum, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before JONES, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

John W. Herbert died in 1934. His executors are the taxpayers in this litigation which concerns the liability of the estate for income taxes on monies received by the estate in 1938 and 1939. When Herbert died, he had a claim against a New Jersey corporation, of which he was sole stockholder, in the face amount of $531,817.75, represented by notes and an open account. Counsel for the taxpayers and the Bureau of Internal Revenue stipulated that the fair market value of this claim at the time of death was $200,191.-90. The taxpayers, to whom the claim passed as an asset, collected on the claim, by the end of 1937, $155,000; in 1938, $127,000; in 1939, $500 and interests in two mortgages, having an aggregate fair market value of $13,303.61. The taxpayers did not include in their gross income in the income tax returns for 1938 and

1939 any part of the amounts collected on the claim in those years. The Commissioner took care of this by adding $81,808.10, the amount by which collections had exceeded the fair market value of the claim, to the ordinary income of the 1938 return, and the amount collected in 1939, to the ordinary income on the return of that year. The Tax Court sustained the Commissioner and the case is now here on petition of the taxpayers.

The Commissioner relies on §§ 111, 22 (a) and 16i(a) (3) of the Revenue Act of 1938,[1] corresponding sections of the Internal Revenue Code and, for judicial precedent, upon Helvering v. Roth, 2 Cir., 1940, 115 F.2d 239, which he says, decided the precise question here involved adversely to the taxpayers. The taxpayers have made an elaborate argument which seeks to distinguish the Roth case and to escape the reach of the sections of the Revenue Acts invoked. It would serve no purpose to detail that argument for the foundation cannot stand up and with its collapse the whole structure falls.

The crux of one phase of the taxpayers' argument is that had the decedent been alive, he could not have been taxed on the difference between what was paid on the debt and its value in 1934. Payment to the executors, they contend, does not alter the situation. This position is clearly untenable today. The Revenue Acts have consistently imposed a tax on the income of estates and provided that the basis of property acquired by the estate from decedent shall be the fair market value. It is thus evident that the legislative theory has consistently been to treat the estate as a new and different taxpayer whose life began when the decedent's expired. Whatever status a personal representative may have for other purposes, he is treated by the Revenue Acts as a new owner of the decedent's property for income tax purposes. The Act of 1928 (§ 113(a) (5), 26 U.S.C.A. Int.Rev.Acts, pages 380, 381) specifically put to rest the notion previously entertained by some taxpayers and supported by some courts that the basis of property acquired by an estate

---

[1] "Sec. 111. Determination of amount of, and recognition of, gain or loss. [26 U.S.C.A. Int.Rev.Acts page 1041].

"(a) Computation of gain or loss.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, * * *.

"(b) Amount realized.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

"Sec. 113. Adjusted basis for determining gain or loss [26 U.S.C.A. Int. Rev.Acts, at page 1048].

"(a) Basis (unadjusted) of property. —The basis of property shall be the cost of such property; except that—

* * * * * * *

"(5) Property transmitted at death.— If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition.

* * * * * *

"(b) Adjusted basis.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided."

"Sec. 22. Gross income [26 U.S.C.A. Int.Rev.Acts, page 1008].

"(a) General definition.—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal * * *; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

* * * *

"(f) Determination of gain or loss.— In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in section 111."

"Sec. 161. Imposition of tax [26 U. S.C.A. Int.Rev.Acts, at page 1030].

"(a) Application of tax.—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

* * * * * * *

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; * * *."

The corresponding sections of the Internal Revenue Code are substantially the same.

might be the cost to the decedent. The statute provided that the basis of property acquired by the estate from the decedent is the value at the date of such acquisition, that is, the date of decedent's death. And, it has been settled that Congress, for income tax purposes, may so start the executor, as one author puts it, from scratch.[2] Hartley v. Commissioner of Internal Revenue, 1935, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399. The conclusion upon this part of the case is that we cannot consider the claim as though held continuously by the decedent. Congress has fixed the date of death, when the decedent's interest ends and that of his personal representative begins, as the significant date, so far as the basis in the representative's hands is concerned.

■ The next question is the legal effect of the payments to the executors by the debtor in the course of liquidation, which resulted in the receipt by them of an amount greater than the stipulated value of the claim at the time of the creditor's death. Was there, in the words of the statute, a "sale or other disposition" of property by the executors within the meaning of § 111? If there was, then the decision of the Board must be affirmed. For the government, it is not contended that there was a sale. But, the taxpayers argue that "other disposition" is to be limited in its meaning by the preceding word "sale". We do not think so. Section 111 is broadly entitled "Determination of amount of, and recognition of, gain or loss" and subsection (a) "Computation of gain or loss." The congressional concern here expressed is obviously not limited to gain or loss in one particular type of property transaction. Certainly the purpose sought to be accomplished by the income tax provisions is to tax all gain except that specifically excluded. That § 111 is not limited only to sales is also evident from subsection (c) thereof which speaks of "sale or exchange". To follow the taxpayers' rule of construction would indeed tend to defeat the general legislative intent and yield a construction inconsistent with other parts of § 111 itself. When such considerations are present, the rule of construction the taxpayers seek to invoke is inappropriate.[3]

■ The basic issue thus presented is, does one who acquires a claim against a third person make a disposition of it when the third person pays it. The dictionary definition of "disposition" is the meaning one usually attributes to the word. It is "The getting rid, or making over, of anything; relinquishment;".[4] In this elementary and usual sense of the word, the transaction certainly falls within the statute. The estate had a chose in action, property, which it got rid of or relinquished upon payment. The rule of construction that the ordinary or settled meaning of a word will prevail, in the absence of an indication that it is to be construed otherwise, needs no citation. Moreover, there is clear evidence found in the Revenue Acts themselves that Congress has used the word "disposition" as including the satisfaction of a debt. See § 44(d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 44(d).[5] And the charging off of a worthless debt has been held to be a "disposition" of property. See Long v. Commissioner of Internal Revenue, 9 Cir., 1938, 96 F.2d 270, certiorari denied 1938, 305 U.S. 616, 59 S.Ct. 74, 83 L.Ed. 392; Ayer v. Blair, 1929, 58 App. D.C. 175, 26 F.2d 547.[6] We have no doubt that the payment here of the claim held by the estate was a "disposition" of the claim within the meaning of § 111.

---

[2] 6 Mertens, Law of Federal Income Taxation (1942) p. 198.

[3] 1 id. § 3.16.

[4] Webster's New International Dictionary (2nd Ed. 1941) p. 752.

[5] Subsection 44(d) is entitled "Gain or loss upon disposition of installment obligations." It reads: "If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income * * *."

[6] See also 6 Mertens, Law of Federal Income Taxation § 36.25.

An alternative theory was suggested by Judge Learned Hand in Helvering v. Roth, supra, which involved the same issue now under consideration. In both cases, it is clear that the difference between the value of the claim on the date of death and the subsequent amount received on the claim, constituted a gain to the estate. It was pointed out in the Roth case that § 22(a) is broad enough to include this sort of gain, Judge Hand noting that Congress was probably not so inept as to let such an obvious gain escape taxation.

One point remains. The taxpayers now seem to question the stipulated valuation of the claim as of the date of decedent's death asserting that what was subsequently realized on the claim is evidence that the stipulated value was incorrect. Apart from the fact that we have an unambiguous stipulation, the validity of which is not impugned, common experience has often shown that what is concededly worthless today may be something of value tomorrow.

Affirmed.