N. Stuart Campbell and Elsie Aldrich Campbell (Husband and Wife), Petitioners, *v.* Commissioner of Internal Revenue Respondent.

Docket No. 5583.    Promulgated June 18, 1945.

*Edward J. Keelan, Jr., Esq.*, for the petitioners.
*C. A. Stutsman, Jr., Esq.*, for the respondent.

### OPINION.

Black, *Judge*: The Commissioner has determined a deficiency of $6,194.01 in petitioners' income tax for the year 1941. Two of the adjustments made by the Commissioner are not contested. The two adjustments which are contested are the disallowance by the Commissioner of a net long term loss of $2,434.13 and the disallowance of an ordinary loss from the sale of property of $9,028.14. The Commissioner explained these two adjustments in his deficiency notice as follows:

The alleged loss of $11,462.27 claimed on your return in connection with the sale of certain residential property acquired by inheritance is not allowable under the provisions of section 23 (e) of the Internal Revenue Code. Moreover. the property was not used in a trade or business and any loss that might be

determinable from the sale thereof would constitute a loss from the sale of a capital asset within the meaning of section 117 (a) (1) of the Internal Revenue Code and consequently any allowable deduction would be limited to 50% of the determined loss in accordance with the provisions of section 117 (b) of the Internal Revenue Code, the property having been held for more than twenty-four months.

The facts have been stipulated and we adopt them as our findings of fact. They may be summarized as follows: The petitioners are individuals and reside at Greenwich, Connecticut. They filed their joint income tax return for the calendar year 1941 with the collector of internal revenue for the district of Connecticut. N. Stuart Campbell will sometimes hereinafter be referred to as petitioner.

On September 19, 1934, petitioner inherited from his father a one-half interest in a house and land located in Providence, Rhode Island. The property had been occupied by the father as a residence, but neither the petitioner nor his sister, who inherited the other half interest therein, intended to occupy it as such. Both petitioner, a resident of Brookline, Massachusetts, since 1930, and his sister, a resident of South Manchester, Connecticut, since 1920, had residences of their own.

As soon as legally possible after the father's death the property was placed in the hands of the real estate agency of Henry W. Cook & Co., with instructions to sell it as soon as possible or to rent it if it could not be sold promptly. Other real estate agents also attempted to sell the property, but it proved impossible either to sell it or to rent it before 1941. Petitioner and the sister planned to remodel the twenty-three room house into apartments for rental purposes, but were prevented from doing this by the Providence zoning laws. The property was finally sold to the American Red Cross in 1941 for $16,600, allocable as follows: land, $5,560; building, $11,040. At the date of the father's death the values were respectively: Total value, $45,100; land, $15,100, building, $30,000.

The actual loss sustained by petitioner upon the sale of his one-half interest in the land after deducting expenses of the sale amounted to $4,868.26. The actual loss sustained by petitioner upon the sale of his one-half interest in the house, after deducting depreciation of $1,950 incurred prior to the sale, and expenses of the sale amounted to $7,728.14. The questions raised by petitioners' assignments of error are:

1. Is the loss suffered by the taxpayer upon the sale of the house and land which he inherited from his father deductible under section 23 (e) of the Internal Revenue Code?

2. Is the loss suffered by the taxpayer upon the sale of the house, as distinguished from the sale of the land, an ordinary loss, deductible in full, or was it a capital loss, subject to the limitation on capital losses contained in section 117 of the code?

*Issue 1.*—Respondent in his determination of the deficiency has disallowed petitioner any loss upon the sale of the real property which he inherited from his father in 1934. The Commissioner has disallowed the loss upon the ground that it was not one "incurred in a transaction entered into for profit, though not connected with the trade or business" within the meaning of section 23 (e) (2) of the code. Respondent relies for support of his determination upon such cases as *Morgan* v. *Commissioner*, 76 Fed. (2d) 390, and *Robinson* v. *Commissioner*, 134 Fed. (2d) 168, affirming T. C. memorandum opinion.

These cases, we think, are not in point. They have to do with situations where the owner of property used as a private residence decided to abandon the use of such property as a private residence and placed it for sale or rent with real estate agents. The holding of the cases cited above was in substance to the effect that the mere placing of such property with a real estate agent for sale or rent was not sufficient to show a conversion of a transaction, originally entered into for personal and private use, into one entered into for profit, not connected with a trade or business.

In the instant case petitioner had never used the property as his private residence and had no intention of doing so after he acquired it by inheritance. The Commissioner argues that, because petitioner's father had used the property for many years as his private residence, the implications of such use go over to petitioner by inheritance and, therefore, the rule adopted by the cases cited above apply to him just the same as if petitioner had actually used the property as his own private residence. Such is not the case. As we recently said in *Estelle G. Marx*, 5 T. C. 173, "The fact that property is acquired by inheritance is, by itself, neutral." We went on to point out that the important inquiry is, To what use was the property put after it was acquired by inheritance? On this point the parties in the instant case have stipulated:

As soon as legally possible after the property in question was inherited by the petitioner and his sister, it was placed in the hands of Henry W. Cook and Company, real estate agents in Providence, Rhode Island, with instructions to sell as soon as possible or to rent if unable to sell promptly. Other agents likewise tried to sell this property, among whom were G. L. and H. J. Gross of Providence, Rhode Island, and Howard Gardner, a real estate dealer in that city. The house was never rented and never produced any income.

These facts are in their effect essentially the same as were present in *Robert W. Williams, Executor*, 1 B. T. A. 1101. See also *Estelle G. Marx, supra.*

As to issue 1, we sustain the petitioners.

*Issue 2.*—The Commissioner contends in the alternative that, if we fail to sustain him on issue 1, then we should hold that the property

which petitioner sold was a capital asset and that only the percentage of loss should be allowed as is provided in section 117 of the code.

Petitioner, on his part, concedes that the land upon which the residence was situated was a capital asset within the meaning of the applicable statute and that the part of the loss which was incurred in the sale of the land was a long term capital loss and must be treated as such. Petitioner contends, however, that so much of the loss as was incurred in the sale of the building itself was not a long term capital loss, but was an ordinary loss, which under the applicable statute is allowable in full. Facts have been stipulated which will enable a correct recomputation of the deficiency under Rule 50 if we sustain petitioner in his contention. The applicable statutes are printed in the margin.[1]

By a study and consideration of section 117 (a) (1), printed in footnote 1, it will be seen that the building which petitioner inherited from his father was a capital asset unless it was "property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1)   *   *   * "

---

[1] SEC. 23. [I. R. C.]   DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*          *          *          *          *          *          *

(g) CAPITAL LOSSES.—

(1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.

*          *          *          *          *          *          *

(l) *DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

*          *          *          *          *          *

[*As amended by sec. 121 (c), Revenue Act of 1942, and made retroactive to the tax year here involved by sec. 121(d).]

SEC. 117.   CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue.

*          *          *          *          *          *          *

(5) LONG-TERM CAPITAL LOSS.—The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such loss is taken into account in computing net income;

*          *          *          *          *          *          *

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 18 months;

66⅔ per centum if the capital asset has been held for more than 18 months but not for more than 24 months;

50 per centum if the capital asset has been held for more than 24 months.

Respondent concedes that the property is of a character which is subject to depreciation, but he argues that it was not being used in petitioner's "trade or business" as that term is used in section 117 (a) (1). Here again respondent bases his argument on the fact that the property in question had been used by petitioner's father as a private residence prior to his death; that the property had never been rented by petitioner after he inherited it; that it had never produced any income to petitioner. Therefore, it can not be said that the property in question was being used by petitioner at the time he sold it, in his "trade or business." In support of his argument in this respect, the Commissioner relies on much the same authorities as he relied on in support of his position in respect to issue 1. These authorities, we think, are not in point.

Petitioner, in support of his position, relies upon our decisions in *George S. Jephson*, 37 B. T. A. 1117, and *John D. Fackler*, 45 B. T. A. 708; affd., 133 Fed. (2d) 509. While the facts in these two cases are somewhat different from the facts in the instant case, we think the governing principles announced in them are applicable here. In the *Jephson* case the taxpayer was engaged in the manufacture of food products and purchased a 26-room residence in 1925 for purposes of rental. He was never able to rent the property, and the Commissioner determined that he was not entitled to deduct maintenance expenses and depreciation in 1932 and 1933, on the ground that the taxpayer was not engaged in the real estate business. Therefore, the property in question was not one "used in the trade or business" of the taxpayer. The issue thus raised in that case was decided for the taxpayer. In so deciding, among other things, we said:

It has been found as a fact from the evidence that the petitioner's only purpose in buying the property at No. 331 was to rent it and that he tried to do so by listing it with a broker and showing it to prospective tenants, and that later he bought No. 332 as a step in assembling property on which to build an apartment house. He had no purpose to occupy the property as his own residence and never in fact did occupy it. Thus it can fairly be said that he was carrying on a business, albeit without actual profit during the years in question. Obviously the inability to rent or sell the property at a profit during the taxable years does not take from the venture its business character, nor does the fact that the petitioner was not devoting his full time to a real estate business. Cases where the property was originally acquired or at some time used for private residence which in various circumstances have held that the deductions are not allowable, are obviously distinguishable.

In the *Fackler* case our decision in the *Jephson* case was cited with approval and was followed. Upon the authority of these two cases, we decide issue 2 in favor of petitioner.

*Decision will be entered under Rule 50.*