GEORGE W. CARNRICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9534. Promulgated October 23, 1947.

*Albert E. James, Esq.*, for the petitioner.
*Neil D. McCarthy, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: We first address ourselves to petitioner's contention that the notice of deficiency was not mailed within the prescribed time. Since the petitioner's return was filed on March 16, 1942, the statute of limitations would ordinarily have expired on March 16, 1945. However, by reason of section 3804 (a) of the Code,[1] the statute was tolled when petitioner embarked for the United Kingdom in February 1944, after the statute had run for less than two years. Under the provisions of that section, the period of time during which petitioner was continuously outside the Americas, and the next 90 days thereafter, are to be disregarded in determining whether the respondent sent the notice of deficiency within the prescribed time. Petitioner returned to this country in February 1945. Thereafter, the statute of limitations still had more than a year to run. Notice of deficiency was sent in August 1945, and so there can be no question but that its mailing was timely. We therefore pass to a consideration of the case on its merits.

Respondent denied any loss deduction to the petitioner on the sale of the property at 185 South Mountain Avenue on the ground that

---

[1] SEC. 3804. TIME FOR PERFORMING CERTAIN ACTS POSTPONED BY REASON OF WAR.

(a) INDIVIDUALS.—The period of time after December 6, 1941, during which an individual is continuously outside the Americas (if such period is longer than ninety days), and the next ninety days thereafter, shall be disregarded in determining, under the internal revenue laws. in respect of any tax liability (including any interest, penalty, additional amount, or addition to the tax) of such individual—

(1) Whether any of the following acts was performed within the time prescribed therefor :

\*      \*      \*      \*      \*      \*      \*

(ii) giving or making any notice or demand, for the payment of any tax, or with respect to any liability to the United States in respect of any tax.

the claimed losses were not incurred in a transaction entered into for profit. In *Estelle G. Marx*, 5 T. C. 173, we said that the fact that property is acquired by inheritance is, by itself, neutral. The important inquiry is what the taxpayer thereafter does with the property. We pointed out in *Marx* the distinction between inherited property and cases where property had been used for residential or other personal purposes by the taxpayer, such as in *Morgan* v. *Commissioner*, 76 Fed. (2d) 390, and where a change of intention must therefore affirmatively appear.

In *N. Stuart Campbell*, 5 T. C. 272, the taxpayer inherited from his father in 1934 a house and land which the father had occupied as a residence until his death. As soon as possible the taxpayer listed the property for rent or sale. He was unsuccessful in obtaining a tenant and sold the property in 1941 at a loss. We held that he was entitled to deduct the loss on the house as an ordinary loss and the loss on the land as a capital loss. The principal difference between that case and this one is that here the petitioner was a minor when his mother died and the property in question was left in a testamentary trust.

The respondent's position appears to be that, because the petitioner occupied the residence after his mother's death and during a part of his minority, there was a dedication to personal use, and that the mere listing for rent or sale thereafter is not sufficient to work a conversion to business use. It is clear, however, that the petitioner never occupied the residence as an owner, but at best as a tenant. The residence property was a part of the testamentary trust provided for in his mother's will. Title to the property was in the trustees so long as the trust continued, that is, until petitioner attained his majority. The use and disposition thereof were absolutely in the discretion and control of the trustees. Neither petitioner nor his guardian, as such, had any power to control the use to which it was put. The trustees were under obligation to manage this property, together with all the other property in the trust, and make it productive. Doubtless that was what prompted the trustees to charge rent for the occupancy of the property. They had full power to sell the property and reinvest the proceeds. Had they decided to sell it on the day before petitioner reached 21, he would have been powerless to stop them.

It is thus apparent that the earliest point in time that the petitioner had any power to determine to what use the property should be put was the day he attained his majority, the trust terminated by its own terms, and he became entitled to possession of the trust corpus as then constituted. His decision was to put it to productive rather than to a personal use. He had not occupied the property for at least a year prior to that time.

So viewed, we think the instant case falls within the rationale of the *Marx* and *Campbell* cases, *supra*. The fact that here the petitioner

was a minor at the time of his mother's decease and the property was held in trust during his minority should not give rise to a different result. Cf. I. T. 3776, 1946–1 C. B. 65, holding that a remainderman who inherited property in 1935, subject to a life estate, was entitled to deduct a loss upon its sale in 1940 after the life tenant's death, where he had listed it for sale immediately after the life tenant died and he became entitled to possession. We accordingly hold that petitioner is entitled to deduct the losses he sustained.

There remains the question of petitioner's basis. Since the property was acquired by bequest, devise, or inheritance, we think his unadjusted basis must be taken as the fair market value at the date of the decedent's death, notwithstanding that his interest was contingent until he reached majority. *Malcolm Clifton Davenport*, 6 T. C. 62; *Helvering* v. *Reynolds*, 313 U. S. 428. His basis on the building, of course, must be adjusted for depreciation at the rate of 2½ per cent a year from the date of the decedent's death to the time of sale.

Relying on *Leland Hazard*, 7 T. C. 372, petitioner contends that the loss on both the land and the building was an ordinary loss. That case, however, involved a sale in the year 1943, after Congress had changed the law in 1942 to remove real property used in a trade or business from the category of capital assets. The sale here took place in 1941 before the law was changed, and, therefore, as in *N. Stuart Campbell*, *supra*, it is held that the loss on the building was ordinary and that on the land was a capital loss.

Reviewed by the Court.

*Decision will be entered under Rule 50.*