**EARLY et al. v. ATKINSON et al.**

No. 5873.

United States Court of Appeals
Fourth Circuit.

May 24, 1949.

Robert N. Pollard, Jr., Assistant U. S. Attorney, Richmond, Va., on the brief), for appellants.

Oliver A. Pollard and William Earle White, Petersburg, Va., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The estate of the taxpayer sued for a refund for $4510.88 net income taxes for the year 1941 on the ground that in that year he suffered a loss incurred in a transaction entered into for profit when he surrendered twenty-four life annuity contracts to the New York Life Insurance Company for $59,760 and accumulated dividends, upon which he had paid $72,000 in premiums. The District Judge held that the difference represented a loss deductible from income under Section 23(e) (2) of the Internal Revenue Code, 26 U.S.C.A. § 23(e) (2), and entered judgment for the plaintiff. The Collector of Internal Revenue appealed.

On November 1, 1938 Rufus Dudley Atkinson, the taxpayer, obtained twenty-four contracts from the New York Life Insurance Company under each of which he agreed to pay an annual premium of $1,000 until the annuitant named in the contract became sixty years of age. Each of twelve annuitants, who were nephews and nieces of the taxpayer, was named in two contracts, and the wife of the taxpayer, Grace M. Atkinson, was named as the beneficiary in each contract.

The taxpayer paid the first premium of $1,000 on each contract or an aggregate amount of $24,000 on November 1, 1938, and also made similar payments on November 1, 1939, and November 1, 1940, making a total amount paid on account of all the contracts of $72,000 for the three years.

On December 28, 1940, Grace M. Atkinson, the beneficiary in each of the contracts died. Thereupon the taxpayer, with the consent and approval of each of the annuitants, secured twenty-four new contracts on January 8, 1941, which were issued under the date November 1, 1938 In the new contracts the names of the annuitants remained the same as in the old,

Robert R Reynolds, Jr., Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General; Ellis N. Slack and A. F. Prescott, Special Assistants to the Attorney General; George R. Humrickhouse, U. S. Attorney, and

but the taxpayer was named as beneficiary in place of his deceased wife.

Each contract provided that the company would pay to the named annuitant a life annuity of a certain sum each month after the annuitant arrived at the age of sixty years; but at any time prior to the commencement of the annuity payments, the annuitant had the option to receive a life annuity consisting of smaller monthly payments beginning at the age of fifty, or a life annuity with ten years certain beginning at said age.

In each of the policies first issued the company agreed to pay to the named beneficiary, in the event of the death of the annuitant, a death benefit according to a schedule set out in the policy if such death occurred prior to the due date of the first annuity payment, or if a life annuity with ten years certain had been elected, and such death occurred after the commencement of the annuity payments and before all of them had been made, the company would continue the annuity payments to the beneficiary until one hundred and twenty such payments in all were made. It was also provided that each contract would participate in the surplus of the company, until the due date of the first annuity, by the payment of annual dividends.

Each of the policies first issued contained the following provision as to the rights of the beneficiary:

"Rights of Beneficiary: Anything in this policy to the contrary notwithstanding, the Beneficiary, Grace M. Atkinson, aunt of the annuitant during her lifetime may without the consent of the annuitant and to the exclusion of the annuitant exercise every option, enjoy every privilege and receive every benefit conferred by this policy, even though elsewhere specifically reserved to the annuitant. If said Grace M. Atkinson predeceases the annuitant the provisions of this clause become null and void, and the Company shall deal with the annuitant in accordance with the terms and conditions of the policy."

Each of the new contracts issued January 8, 1941, in which the taxpayer was the named beneficiary, contained a similar provision as to the rights of the beneficiary.

There was no right to change the beneficiary under either set of contracts.

In order to sustain the judgment below, the representatives of the taxpayer's estate must show (1) that the taxpayer suffered a loss, and (2) that the loss was incurred in a transaction entered into for profit. The District Judge in his examination of the case with respect to the first point endeavored to ascertain the substance rather than the form of the transaction; and although the original contracts purported to be made solely for the benefit of the annuitants and the beneficiary, he held that they actually constituted an investment to the taxpayer, which was subject to his control through his wife during her lifetime, and after her death through his nephews and nieces who were dependent upon him for the payment of the annual premiums. Looking at the facts from this viewpoint the judge assumed that "the usual relationship of husband and wife existed" and concluded that the taxpayer suffered a loss of $12,240, that is, the amount by which the premiums paid by the taxpayer in 1938, 1939 and 1940 exceeded the amount received by him in 1941 when, as beneficiary, he exercised the option to surrender the contracts and receive their cash surrender value.

It is suggested that support for this analysis may be found in the cases which hold that liability for income taxes may not be avoided by stressing the form rather than the substance of transactions, or by transfers between members of a family whereby the head of the family, while seeming to relinquish control, actually retains control of property or income while the economic situation remains the same. Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L. Ed. 679; Stockstrom v. Commissioner, 8 Cir., 148 F.2d 491; Stix v. Commissioner, 2 Cir., 152 F.2d 562; Richardson v. Smith, 2 Cir., 102 F.2d 697, 125 A.L.R. 774; Helvering v. Security Savings & Commercial Bank, 4 Cir., 72 F.2d 874.

We do not think that this position can be maintained. The benefits which the

company agreed to provide under the contracts, in consideration of the premiums paid by the taxpayer, represented gifts by the taxpayer to the annuitants or the wife, as the case might be. There is no evidence of any understanding or mutual intent between the husband and wife that he should retain control, notwithstanding the form of the contract which conferred no benefits upon him. These benefits related to the future and had no bearing upon the present taxable income of the taxpayer. The mere relationship of husband and wife is insufficient, even for tax purposes, to nullify a gift from husband to wife.[1]

Similarly there was no evidence of any agreement or understanding between the taxpayers and the annuitants, and in the absence of any evidence on the point we cannot assume that such an understanding existed. There can be no doubt that even if the taxpayer controlled the situation through his wife during her lifetime, the rights of the annuitants became fixed and beyond his control upon her death. We do not think that the reissue of the contracts with the taxpayer as beneficiary can be regarded in any other light than as a gift to the taxpayer on their part. It may have been induced by the hope that the taxpayer would continue the payment of the premiums for their benefit, but no agreement to that effect was executed and within a year the taxpayer surrendered the contracts and accepted their cash surrender value.

In this view of the situation, it remains to consider whether the taxpayer suffered a deductible loss when he accepted the cash surrender value of the contracts. The statute provides that in computing net income there shall be allowed as deductions losses of individuals incurred in any transaction entered into for profit; and that the basis for determining the amount of the losses from the sale or other disposition of property shall ordinarily be the cost thereof, but if the property was acquired by gift, the basis shall be the same as it would be in the hands of the donor or of the last preceding owner by whom it was not acquired by gift, except that for the purpose of determining loss, the basis shall be the basis so determined or the fair market value of the property at the time of the gift, whichever is lower. Internal Revenue Code §§ 23(e, i), 113(a) (2), 26 U.S.C.A. §§ 23(e, i), 113(a) (2). The estate of the taxpayer suggests that the last preceding owner by whom the annuity contracts had not been acquired by gift was the decedent taxpayer who purchased them; but even if this be true, it is still necessary under the terms of the statute to determine which is lower—the cost to the taxpayer or the fair market value of the contracts at the time of the gift, by which he was substituted for his wife as the beneficiary with the consent of the annuitants.

The Commissioner determined that the taxpayer suffered no loss and this determination must be accepted as prima facie correct; and the burden is upon the taxpayer to establish not only the fact of his loss but the extent thereof. A taxpayer who claims a deduction must not only point to the law which authorizes it, but must also present facts clearly bringing his claim within it. Deputy v. Dupont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

No direct evidence was offered in the pending case as to the value of the contracts on January 8, 1941, when the taxpayer acquired a beneficial interest therein by gift, or on November 8, 1941, when he surrendered them to the company; and the only evidence which throws any light upon their value in 1941 must be found in the contracts themselves, in the amount of the premiums paid in the preceding three years, and in the cash surrender value of the con-

---

[1] In Ward Wheelock v. Commissioner, 7 T.C. 98, 106, the court said: "We do not think that either in logic or in law we may base what amounts in tax law to ownership alone upon mere 'rightful expectations' or 'undoubted assurance' on the part of the husband as to what his wife would do. The history of divorce courts and the modern tendency toward recognition of separate legal rights in wives oppose such an approach." See also Eisenstein, The Clifford Regulations and the Heavenly City of Legislative Intention, 2 Tax L.Rev. 237; 6 Mertens, Law of Federal Income Taxation, §§ 37.16-37.17.

tracts in 1941 which was the same throughout the year.

The estate contends that the aggregate premiums paid must be taken as the value of the contracts under the authority of Guggenheim v. Rasquin, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813, and kindred cases, in which the Supreme Court held that under the Federal Gift Tax, § 506 of the Revenue Act of 1932, 47 Stat. 248, 26 U.S. C.A. § 1005, the value of a single premium policy of life insurance, irrevocably assigned simultaneously with issuance, was the cost to the donor, that is, the amount of the premium paid and not the smaller cash surrender value in the year of issuance. The reason was that the surrender value was only one of the rights which the policy conferred while another was the right to retain the policy and receive the face amount thereof upon the death of the insured, and this right may fairly be said to be worth what the policy cost. But, in the pending case, the beneficiary had no such definite choice. There was no certainty that the contract would ever ripen into paid-up annuities, for the company's promise to pay annuities was contingent upon the payment of annual premiums, and the question arises as to whether the contingent right to receive payments in excess of the premiums in the future was worth any more than the assured right to accept the definite sum specified in the policy for the surrender of the contract at any time.

The estate of the taxpayer points out that the cash surrender value is only one of the elements to be taken into consideration in finding the fair market value of the contracts in suit. There was, for example, the option to take a life annuity with ten years certain, beginning at the age of fifty years, and also the right to death benefits upon the death of an annuitant during the policy year; but it is not shown that these alternative rights were of any greater market value than the cash surrender value actually received.

 It is noteworthy that under the governing statute, the test for ascertaining the basis of the amount of the loss is the specific term "market value", and not the broader term "value" of the gift which is applicable when the calculation of a gift tax is the subject of inquiry. No evidence of the market value of the contracts on January 8, 1941, has been offered, and no showing has been made that their value could be realized in any way except by the acceptance of the cash surrender value. In the absence of any other evidence to overcome the Commissioner's determination, it seems to us reasonable to consider that the cash surrender value and the market value are the same. An analogous rule is applicable to policies of life insurance kept in force by the payment of annual premiums where it is held, in the absence of evidence to the contrary, that the cash surrender value at any time may be taken as the cost of the reserve which constitutes the investment of the policy holder and represents the excess of the premiums over the cost of carrying the insurance during the earlier years of the policy's life. London Shoe Co. v. Commissioner, 2 Cir., 80 F.2d 230; Century Wood Preserving Co. v. Commissioner, 3 Cir., 69 F.2d 967.

 It is also our view that the taxpayer did not enter into the transaction for profit so as to make any loss incurred an allowable deduction under Section 23(e) (2) of the statute. The taxpayer's motive or state of mind determines the deductibility of the loss in this respect. Helvering v. National Grocery Co., 304 U.S. 282, 289, note 5, 58 S.Ct. 932, 82 L.Ed. 1346, and the purpose to derive a gain must be the chief or primary one so that an incidental or subsidiary prospect or hope of gain does not satisfy the statute. Paine v. Commissioner, 1 Cir., 102 F.2d 110; Lihme v. Anderson, D.C.S.D. N.Y., 18 F.Supp. 566.

The prime purpose of the taxpayer in entering into the contracts in the pending case was obviously to obtain an assured income for the annuitants when they attained the age of sixty years. His motive was security rather than profit. He sought nothing for himself, cf. Goldsborough v. Burnet, 4 Cir., 46 F.2d 432, and his concern for them was the assurance of a fixed income rather than the expectation that they would draw out more than he paid in. The The provisions of the contracts support this view. If they should be cancelled for nonpayment of premiums at any time before the expiration of ten years, the cash sur-

render value would be less than the premiums paid. The death benefits payable upon the death of the annuitants during any policy year were only slightly more than the cash surrender value. The annuitants had the right to a life annuity for a fixed sum or if they preferred, a slightly smaller life annuity payable for ten years certain, and as long thereafter as they should live.

But the amounts payable in any event were necessarily reduced by the company's expense in initiating and administering the business, and even if the contracts were kept alive for such a time as the payments received would exceed the premiums paid, there is nothing to show that the return on the money would have been as great as might have been expected from prudent investment. The taxpayer clearly preferred the company's guarantee of a fixed return, limited by the necessary expense involved, to the possibility of substantial profit.

■ The decisions, in which the gain or loss involved in annuity contracts is considered, for the most part take the view that when the clear purpose is manifest to safeguard the interest of the assured by providing a fixed annual income, the mere fact that the amount received is less than the premiums paid does not of itself constitute a deductible loss. Nor does the mere possibility that a profit may be incidentally involved indicate that the transaction was "entered into for profit." Seaman v. United States, 7 Cir., 156 F.2d 719, 724; Industrial Trust Co. v. Broderick, 1 Cir., 94 F.2d 927. Cf. George M. Cohan v. Commissioner, 11 B.T.A. 743, 748, 759.[2]

■ Some attempt is made in these decisions to distinguish between annuities for life and annuities for a fixed period of years in the application of the rule. The reason seems to be that when one buys an annuity for a fixed period which will enable him at some time in the future to receive payments which in the aggregate exceed the sum of the premiums, the existence of the profit motive is more readily discernible than when the policy holder takes the

chance and invests for the uncertain period of his life in an annuity which in most instances provides for larger payments by the company. The distinction is of doubtful validity since the rates are fixed by the insurance companies and are undoubtedly calculated so as to produce substantially the same return to the insurer. However that may be, the prospect of any substantial profit to the contract holders in the pending case under any available option was so remote, and the purpose to obtain security for the annuitants was so pronounced, that it cannot be said that the taxpayer entered into the transaction primarily for profit.

Reversed.

---

[2] These decisions may be contrasted with those which involve the existence of the profit motive in the purchase of corporate stock. See Weir v. Commissioner, 3 Cir., 109 F.2d 996; Tams v.

United States, D.C.S.D.W.Va., 33 F. Supp. 764; Houston v. Commissioner, 3 Cir., 39 F.2d 351, reversed on other grounds, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991.