## HATCH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 187, Docket 21758.

United States Court of Appeals
Second Circuit.

Argued April 11, 1951.

Decided June 29, 1951.

Chadbourne, Hunt, Jaeckel & Brown, New York City (William M. Chadbourne and John B. Whalen, New York City, of counsel), for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson and Melva M. Graney, Special Assts. to the Atty. Gen., for respondent.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The petitioner is the widow and sole legatee of Frederic H. Hatch, who died April 2, 1930. Among the decedent's assets was a contract, dated May 19, 1928, by the terms of which Frederic H. Hatch & Co., a corporation, agreed to employ him for ten years at an annual salary of $30,000 and, in the event of his death, agreed to pay the annual salary to his estate for ten years beginning on the date of death. The corporation also assumed an obligation contingent on the amount of the corporation's net earnings to pay his estate an additional sum, but no payment was ever made under this provision of the contract. For purposes of the federal estate tax the contract was valued at $243,326.70.[1] By mutual consent of Mrs. Hatch and the corporation the annual salary payments were varied from time to time and less than $30,000 per year was paid, but, as of December 31, 1941, in which year she was paid $15,750, the total payments received by her exceeded the estate tax valuation of the contract by $7,923.30, and in each of the years 1942 and 1943 she received $12,000. The excess payments were not returned by her as income. The Commissioner ruled that they should have been and determined deficiency assessments which the Tax Court has sustained, with two members dissenting. 14 T.C. 237.

On this appeal the taxpayer makes three contentions: (1) that the payments in excess of the commuted value of her husband's employment contract are not taxable income to his legatee; (2) that if the difference between the face amount of the contract and its estate tax valuation is income, such income should be allocated over the life of the contract with the result that each of the payments represents part income and part return of capital; and (3) that assessment of a deficiency for the year 1941 was barred by section 275(a) of the Internal Revenue Code, 26 U.S.C.A. § 275(a).

Section 22(a) of the Code provides that gross income shall include "gains * * * derived from any source whatever * * *"; but section 22(b) (3) excludes from gross income and exempts from federal income taxation "The value of property acquired by gift, bequest, devise, or inheritance." Section 111(a) provides that "The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain * * *." The adjusted basis provided by section 113(b) is the unadjusted basis of section 113(a) less items properly chargeable to capital account. And section 113(a) (5) deals with property transmitted at death and provides: "If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition."

Any doubt that the amounts received by Mrs. Hatch in excess of the estate tax valuation of the contract is taxable income is dispelled for this court by our decision in Helvering v. Roth, 2 Cir., 115 F.2d 239. We there held that amounts received in payment of notes valued as worthless in the estate of the recipient's testator were income to the recipient. The Roth case is not distinguishable, as the petitioner suggests, on the ground that payments by the corporation on her claim did not constitute a "disposition" of the claim within section 111(a), as did retirement of the Roth notes. We agree with Judge Goodrich that receipt of an amount due on a contract obligation is *pro tanto* a "disposition"—relinquishment—of the obliga-

1. This was computed on the basis of the present value factor of $30,000 a year for a 10 year term-certain, in accordance with the factor which now appears in Table B of Regulations 105. No value was ascribed to the obligation contingent on the corporation's net earnings.

tion.[2] But even were we to assume *arguendo,* that there were no "disposition" within section 111(a), we think it clear that payments in excess of the estate tax valuation of the contract constituted taxable income within the broad definition of section 22(a), which includes any gain not specifically excluded by other provisions of the Code. Section 22(b) (3) excludes from section 22(a) the "value" of property acquired by bequest. How property acquired by bequest is to be valued is provided by section 113(a) (5) which declares that the basis for determining gain or loss, in the case of a bequest "shall be the fair market value of such property at the time of * * * acquisition." Hence the "value" of the bequest excluded from taxation by section 22(b) (3) was $243,326.70, and anything received in excess of such value is taxable "gain" within section 22(a), as stated in the Roth case, 115 F.2d 239, 241. Although this conclusion appears to be contrary to that reached in United States v. Carter, 5 Cir., 19 F.2d 121, we adhere to what was said of that case in the Roth opinion.

■ We pass now to the petitioner's alternative contention, namely, that the difference between the face amount of the contract and its estate tax valuation should be allocated over the life of the contract. The Tax Court rejected this contention and held that the excess payments were 100% income. With this conclusion we are unable to agree. When Mrs. Hatch acquired the contract under her husband's will, it was obviously worth less than $300,000, the total salary payments called for by its terms, since a promisor's obligation to pay $30,000 a year for ten years is not the equivalent of an obligation to pay $300,000 forthwith. The present value of the contract was computed by discounting the future payments in accordance with the factor which now appears in Table B of Regulations 105. When the obligation

shall have been discharged in full Mrs. Hatch will have received a return of the acquisition value of the contract, $243,326.-70 plus the discount of $56,673.30 by which the face amount of the contract was reduced. The former amount is excludible from taxation as the "value" of property acquired by bequest, the latter is taxable as "gain." When the obligation is discharged in periodic payments, "It is no more correct to say that the part payment was all a return of principal than it is to say it was all a return of income." [3] We think that each installment payment received by Mrs. Hatch should be allocated between the non-taxable bequest and the taxable gain. According to Table B, used to obtain the present worth of the contract, 81.1089 per cent. of each payment represents present worth and 18.8911 per cent. represents gain. Hence the taxpayer contends that only 18.8911 per cent. of the payments received during the years here involved is taxable. This would mean $2,975.35 for 1941 and $2,266.93 for each of the years 1942 and 1943.

The Commissioner does not contend that statutory authority is essential to the use of the allocation method in a case where the amount of future gain is definitely determinable. He denies, however, that the amount of future gain is definitely determinable in the case at bar, relying upon Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143. We find nothing in that case to render inapplicable the views we have expressed. It was there held that the allocation method may not be applied to a contract in which the ultimate amount to be received thereunder could not be determined with reasonable certainty because the promise of the obligor was conditional on the amount of iron which it might mine. By contrast, the contract in the case at bar obligated the corporation to pay a fixed sum yearly for a ten year term, so that its present value was neither specu-

2. Herbert's Estate v. Commissioner, 3 Cir., 139 F.2d 756, 758, certiorari denied 322 U.S. 753, 64 S.Ct. 1263, 88 L.Ed. 1282. See also United States v. Archer, 1 Cir., 174 F.2d 353, 356.

3. The quotation is from Shafpa Realty Corp. v. Commissioner, 8 B.T.A. 283, 284; see also Gilbert v. Commissioner, 6 T.C. 10, 13; Platt v. Bowers, D.C.N.Y., 13 F.2d 951, 952.

lative nor difficult to estimate. It is true that the contract also contained a contingent obligation which might have increased the amount to be paid by $100,000, but no value was ascribed to this contingent promise in fixing the estate tax valuation. Nor can it be inferred, as the Commissioner suggests, that the fact that the annual sums payable were varied from time to time by mutual consent indicates that the financial condition of the corporation was such as to create doubt whether the contract would be completely carried out. So far as appears the modifications agreed upon may have been made at the taxpayer's request and for her convenience. The estate tax valuation presupposed complete performance of the obligation to make the salary payments.

If as we hold, the amounts received annually should be allocated between income and return of capital—value of the bequest at date of acquisition—the Commissioner's assessment of a deficiency for the year 1941 was barred by the three year statute of limitation, section 275(a) of the Code, unless the period was extended by section 275(c), which provides a five year limitation if the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per cent. of the gross income stated in the return. The Commissioner has made no argument that, if the allocation method is applicable, the 1941 assessment was timely. Applying the principle enunciated in Green v. Commissioner,[4] with which we are in accord, it appears that the amount of gross income omitted from the return was not sufficient to bring into play the five year limitation of section 275(c).

For the foregoing reasons we hold that the 1941 deficiency should be expunged and the 1943 deficiency be recomputed. Decision reversed and cause remanded for further proceedings in conformity with this opinion.

4. 7 T.C. 263, affirmed 6 Cir., 168 F.2d 994.