### WATERMAN'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 95, Docket 22101.

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1952.

Decided March 5, 1952.

Frank, Circuit Judge, dissented.

Hughes, Hubbard & Reed, New York City, John M. Veague, Jr., John Westbrook Fager and Donald M. Harris, all of New York City, of counsel for petitioner.

Ellis N. Slack, Melva M. Graney, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

When Frank D. Waterman died in 1938, he left as part of his estate, of which Frank S. Waterman is the sole surviving executor and the petitioner herein, a non-interest bearing bill of exchange for ten thousand pounds signed by L. G. Sloan, Ltd., of London, England. That bill of exchange was valued for estate tax purposes at $46,806.-94.

In 1945, the obligation was paid by depositing ten thousand pounds to the credit of the petitioner in a London bank where it was held throughout 1945, because of currency restrictions of the British government, in a blocked sterling account. Pounds in such a blocked account were not convertible into dollars during 1945 but,

throughout that year, the official rate of exchange for convertible pounds was $4.04. The petitioner filed a fiduciary income tax return for the estate in 1945 in which no loss deduction was claimed on the collection of the bill of exchange but the Commissioner determined a deficiency in taxes on income as reported in that return and, in the proceedings which followed, the deductibility of a claimed loss on the collection of the obligation was put in issue. The amount so claimed is $6,406.94, which is the difference between the value of the obligation in dollars at the decedent's death and the value in dollars of ten thousand convertible pounds at the date of payment.

The Tax Court held that no loss deduction was allowable because it had not been shown that the decedent acquired the note either in a business transaction or in one entered into for profit and, accordingly, upheld the Commissioner's determination without finding it necessary to deal with any other questions.

■ This loss deduction was claimed under Sec. 23(e) (2) I.R.C., 26 U.S.C.A. § 23(e) (2), and its allowance is, by the terms of the statute, conditioned upon its having been sustained by the taxpayer in a "transaction entered into for profit". But, whether the decedent acquired it in such a transaction is not decisive since the estate is a taxpayer separate and distinct from the decedent. Sections 161, I.R.C., 26 U.S.C.A. § 161; Herbert's Estate v. Commissioner, 3 Cir., 139 F.2d 756, certiorari denied, 322 U. S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582. The controlling consideration is, therefore, whether the acquisition of the obligation by the executor in behalf of the estate was a "transaction entered into for profit" in the statutory sense. That it was follows from the nature of the duty of the executor in dealing with assets of the estate coming into his hands. That duty excludes the possibility of his holding this asset for any personal use. Cf. Carnwick v. Commissioner, 9 T.C. 756. On the contrary, it required him to dispose of it on the best terms possible and to account to the estate for whatever, if anything, he could legitimately

get above the amount at what it was valued when he acquired it. That his collection of the obligation was a disposition of it on the best possible terms stands unquestioned on this record. Collection was a taxable event. Herbert's Estate v. Commissioner, supra; Hatch v. Commissioner, 2 Cir., 190 F.2d 254; Helvering v. Roth, 2 Cir., 115 F.2d 239. Since the most he could get was less than the value of the asset when he acquired it a transaction entered into for profit resulted in a deductible loss.

■ When the note was paid in blocked pounds, the taxpayer "realized" the value in dollars of such foreign currency in that taxable year notwithstanding the fact that, because the pounds were "blocked," the recipient was then unable to convert them into American money. Eder v. Commissioner, 2 Cir., 138 F.2d 27. By the same token, the taxpayer sustained a loss when the note was so paid and that fixed the time as of which the loss was allowable. It may be that the loss was actually more than claimed for that has been computed by the taxpayer on the basis of unblocked pounds while blocked pounds were presumably worth less. However, it is obvious that the loss was at least as great as that claimed and the petitioner is entitled to that part which has been proved regardless of whether it may have been more. Cf. Cohan v. Commissioner, 2 Cir., 39 F.2d 540.

Decision reversed and cause remanded for an allowance of the loss claimed.

FRANK, Circuit Judge (dissenting).

I begin with these first principles of income taxation: Although Congress, as it states in § 22(a), intends to include in gross income all gains "derived from any source whatever", it does not intend that deductions for losses should be taken except as Congress expressly permits. In § 23(e) (2), it does permit a deduction of a loss incurred in a "transaction entered into for profit, though not connected with the trade or business".[1] The courts hold that the quoted words mean that the taxpayer's motive or "state of mind" is crucial, that a loss is not deductible if he lacked a domi-

---

1. Section 23(e) also permits deductions of other sorts of losses not here pertinent.

nant profit motive when he undertook the transaction.[2]

I dissent because in this case my colleagues rub that requirement out of the statute. They do so by ruling that, when no such motive existed during a man's life, it is inevitably born the moment he dies. This paradoxical notion of death's creative power will fascinate anyone who admires the writings of the lawyer-poet-preacher John Donne, but I think it has no place in construing statutes.

My colleagues and I agree on the following: (1) It was not shown (indeed taxpayer rested his case largely on the irrelevance of showing) that the £10,000 loan, which bore no interest, resulted from a transaction into which the decedent entered with the essential gain-pursuing mental attitude; (2) the decedent had no lack of intention to collect the debt, yet, had he lived and collected it precisely as and when his executor later did, no loss could have been deducted;[3] (3) the sole difference here is that the decedent died and the title to the debt then passed to his executor. My colleagues hold that this death-caused passing of title constituted a "transaction entered into for profit". I cannot go along with this conclusion, which rests on the premise that the single fact of death is a complete substitute for proof of the required profit-seeking motive.

It fogs the issue to consider the cases where estates have been taxed pursuant to the dragnet provisions of § 22(a), which (as above noted) renders taxable all gains from "any source whatever." For losses and gains differ strikingly: If, on a sale or "disposition, there is a loss, it is ignored for tax purposes—unless it stems from a profit-motivated transaction;[4] but if there is a gain, it must be included in gross taxable income regardless of any such motive. The courts have held, in the cases cited by my colleagues, that an executor is a new taxpayer, "separate and distinct from the de-

cedent", and that, under § 22(a), a taxable gain ensues if the amount collected by the executor, on any note or debt the decedent had owned, exceeds the estate-tax valuation of that note or debt. See Hatch v. Commissioner, 2 Cir., 190 F.2d 254; Helvering v. Roth, 2 Cir., 115 F.2d 239; Herbert's Estate v. Commissioner, 3 Cir., 139 F.2d 756, certiorari denied 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582. As, however, in those cases there had been gains but no losses, the opinions did not discuss the transaction-entered-into-for-profit test in general, nor in particular the problem facing us here, i. e., whether a loan made by a lender without profits in mind will meet that test when, and only because, it passes from the lender to his executor.

Not § 22(a) but § 23(e) (2) governs here; and, in a § 23(e) (2) case, the taxpayer has the burden of proving that, at the time he entered into the transaction, his dominant motive was profit-making.[5] A taxpayer who buys an object or loans money, at that time necessarily has an intention, one way or the other, *vis a vis* the making of profit. But if someone else buys the object or makes the loan, and the taxpayer acquires it from him by inheritance, the taxpayer cannot show that he actually had such a motive at the very moment he "entered into the transaction"—the "transaction" of inheriting the property. It is arguable, not unreasonably, however, that whatever the decedent's motive may have been, it should be deemed to continue and to pass to the taxpayer. So when the decedent had no profit motive—as where he bought for his own use a residence or a pleasure-yacht— the Tax Court has held that the same motive is assumed to continue after his death and is therefore to be ascribed to the inheritor—unless he promptly manifests a change to a commercial attitude, as by trying at once to sell or rent the residence or the yacht. See Campbell, 5 T.C. 272; Marx, 5 T.C. 173; Carnrick, 9 T.C. 756; R. Foster

2. Early v. Atkinson, 4 Cir., 175 F.2d 118, 122; Gevirtz v. Commissioner, 2 Cir., 123 F.2d 707, 708.

3. See, e. g., Dexter v. Commissioner, 1 Cir., 99 F.2d 769; Helene I. Fagan, 9 T.C.M. 44 (1950).

4. Or comes under some other explicit loss-deduction provision not here pertinent.

5. Mertens Law of Federal Income Taxation § 2803 (1942 and 1951 Supp.) and cases therein cited.

Reynolds, 4 T.C.M. 837; affirmed 1 Cir., 155 F.2d 620. In such cases, the Tax Court has warned that *"the fact that property is acquired by inheritance is, by itself, neutral. The important inquiry is what the taxpayer thereafter does with the property."* Carnrick v. Commissioner, supra, 9 T.C. at page 760.[6] *"* * * neither does [inheritance] in and of itself demonstrate a motive connected with gain or profit, as might, for example, the purchase of investment property. * * * [I]f nothing more is shown than that property was acquired by inheritance, any loss must be disallowed."* Marx, supra, 5 T.C. at page 174.[7]

In such a case, according to the Tax Court, the inheritor is permitted to prove, if he can, a disjunction from, or discontinuity with, the decedent's non-commercial attitude. This discontinuity, the Tax Court allows the taxpayer to prove by showing that he immediately took steps significantly disclosing a shift to a new intention. Whether the Tax Court, in so deciding, correctly interpreted § 23(e) (2) need not here be considered. But, assuming it did, the important fact in the case at bar, is that the taxpayer (the executor) took no significant steps at all to show any change of attitude. The decedent, who obtained the note in a non-profit mood, had held it with the obvious intention of collecting it. The executor, in continuing to hold the note for collection, did nothing new, nothing to suggest a departure from the attitude with which the decedent acquired and retained ownership of the note. It is no answer to say, as my colleagues do, that the executor had a "duty" to collect. For, since the decedent had the same intent to collect, the executor's duty to collect does not supply any evidence of a break with the decedent's intent.

In short, I disagree with my colleagues' conclusion that the original note-owner's death, without more, automatically converted the reason for holding the note for collection from one devoid of a profit motive to one in which that motive dominated. Mechanically to give such effect to the mere fact of death is to eliminate utterly the statutory requirement that the taxpayer have a primary profit-making intention. Such elimination, I think, is not statutory interpretation but statutory nullification.