Estate of Zinaida Bary, deceased, Woldemar A. Bary, Executor v. Commissioner. Woldemar A. Bary and Nina Bary v. Commissioner.
Estate of Bary v. Commissioner
Docket Nos. 2750-64, 2751-64.
United States Tax Court
T.C. Memo 1965-322; 1965 Tax Ct. Memo LEXIS 7; 24 T.C.M. (CCH) 1790; T.C.M. (RIA) 65322; December 22, 1965
*7 In 1955 Congress enacted legislation which, for the first time, gave certain nationals of the United States an enforceable right against Russian assets long held by the United States. Decedent, a United States citizen whose property, located in Russia, had been confiscated by the Soviet Government in 1918 and 1919, died in New York in 1940, leaving all of her property to her son, Woldemar A. Bary. Her will was probated in 1958. In 1959 the decedent's estate received a payment from the Foreign Claims Settlement Commission pursuant to the 1955 legislation, and the estate made a distribution of a portion of such payment to beneficiary Woldemar. Held, the payment received by the estate in 1959 was taxable to it in full as ordinary income, with deduction for the distribution in 1959. The claim had no determinable value at the time of decedent's death in 1940. Held, further, the distribution made by the estate to the beneficiary Woldemar is similarly taxable as ordinary income. William J. Graham, for the petitioners. Kennard I. Mandell and Lee A. Kamp, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in the 1959 income tax of petitioner estate in Docket No. 2750-64 in the amount *9 of $15,207.23 and in the 1959 income tax of petitioners in Docket No. 2751-64 in the amount of $27,494. The two dockets were consolidated for trial, briefing and opinion. The pertinent question is the value of a claim which the decedent in Docket No. 2750-64 owned at the time of her death in 1940. Findings of Fact All of the facts have been stipulated and they are found accordingly. The decedent, Zinaida Bary, was the widow of Alexander V. Bary, a naturalized citizen of the United States. The Barys resided in Russia where Alexander conducted an engineering business in Moscow up until his death in 1913. Under his will, which was probated in the Moscow Circuit Court in 1913, decedent was bequeathed all his property, which included a Moscow residence, cash and securities located in Moscow, and the assets of the engineering business. In 1918 and 1919 all of the property so acquired by decedent was confiscated by the Union of Soviet Socialist Republics, herein referred to as Soviet Russia. Subsequent to the year 1919 the government of the United States seized all of the property located in the United States that was owned by Soviet Russia and its citizens. In November 1933, pursuant *10 to an agreement that is often referred to as the Litvinov Assignment, under which the United States extended formal recognition to the Soviet Government, the latter government agreed not to pursue any legal claims that it might have to the seized property and assigned its rights thereto to the United States Government. Decedent, who was a United States citizen by virtue of her husband's naturalization, left Russia and entered the United States in 1925. She established her permanent residence in New York State and in 1927 she executed a one-page will which provided, in part: I give, devise and bequeath all my property, real, personal and mixed, wherever situate, including any claims which I may have or possess, to my son, WOLDEMAR A. BARY. The will named Woldemar, who was a resident and citizen of the United States, and the officers of a New York corporation as executors. Zinaida died February 18, 1940, a resident of New York County, New York. Her will was not offered for probate until June of 1958, more than 18 years after her death. Letters Testamentary under said will were granted to Woldemar by the Surrogate's Court, County and State of New York, on May 8, 1959, and there *11 is nothing in the record to indicate there was any co-executor. In 1956, Woldemar Alexander Bary, as an executor designated in the last will and testament of decedent, filed with the Foreign Claims Settlement Commission of the United States a claim against the Government of Soviet Russia, pursuant to the International Claims Settlement Act of 1949, as amended, and contained in subchapter III of Chapter 21 of the U.S. Code (Title 22 U.S.C.A., Sec. 1641). The claim was for the loss of the confiscated property alleged to be in the total amount of $3,088,123.50. By decision of the Foreign Claims Settlement Commission dated June 29, 1959, an award was made with respect to the above claim to Woldemar Alexander Bary as executor of the estate of decedent, in the amount of $1,276,122.50, plus interest thereon in the amount of $1,127,090.55. Under date of September 4, 1959, Woldemar Alexander Bary, as executor of decedent's estate, received payment of an award from the Soviet Claims Fund created in the United States Treasury Department in the sum of $850, representing the net amount of a payment of $1,000, less attorneys' fees in the amount of $150, and on December 22, 1959, said executor *12 received payment of an award from the Soviet Claims Fund created in the United States Treasury Department in the sum of $105,326.44, representing the net amount of a payment of $123,913.46, after deducting attorneys' fees of $18,587.02. Of the net amount paid to the estate, $64,500 was distributed to Woldemar A. Bary as beneficiary during the year 1959. On June 13, 1960, Woldemar A. Bary, executor, filed a United States Fiduciary Income Tax Return (Form 1041) for the estate of decedent for the calendar year 1959 with the district director of internal revenue, Upper Manhattan, New York City, New York. On Schedule D of this return the payment of $124,913.46 received from the Foreign Claims Settlement Commission was reported as a long-term capital gain of $67,516.61 with a reported basis for the claim of $57,396.85. In his notice of deficiency respondent disallowed some research expenses and guardian's fees and determined the claim, resulting from the confiscation of decedent's property, had a zero basis and the amount received in payment constituted ordinary income. However, respondent's determination held the estate was entitled to a deduction for the 1959 distribution to Woldemar *13 in the amount of $64,500. The disallowed research expenses and guardian's fees do not seem to be questioned by the estate. On June 14, 1960, Woldemar A. Bary, as executor, filed a United States Estate Tax Return, Form 706, for decedent's estate listing the above described claim as the only asset of the estate and its value at date of decedent's death in the amount of $57,396.85. On January 23, 1962, Woldemar A. Bary and his wife, Nina Bary, filed their individual income tax return, Form 1040, for the year 1959 with the district director of internal revenue, Upper Manhattan, New York City, New York. The so-called return does not report the receipt of any income but attached thereto is a letter dated January 22, 1962 from taxpayers' attorney, who prepared the return, addressed to the director which states, in part: During the course of an examination of the Fiduciary Income Tax return of the Estate of Zinaida Bary, a contention has been made that the taxpayers may have received income during the year 1959, by virtue of a distribution from the estate. Accordingly, the enclosed return is being filed at the present time. No return was filed previously since the taxpayers had no gross *14 income for the year 1959. In his notice of deficiency respondent determined Woldemar A. Bary realized taxable income of $64,500 from the estate of Zinaida Bary for the year 1959. In its petition the estate alleged that the "Commissioner erroneously determined that petitioner's basis for said claim was zero when in fact it was at least $57,396.85," and also that the "Commissioner erroneously determined that the gain, if any, realized by petitioner on said claim was ordinary income and not a long term capital gain." Opinion The estate is a separate taxable entity. [1] It is required to pay income taxes on "all income from whatever source derived". Section 61, Internal Revenue Code of 1954. The full amount received from the Foreign Claims Settlement Commission is taxable income to the estate within the above definition unless it can be said the decedent's claim had a fair market value in some dollar amount at the time of her death in 1940. If it had a fair market value in 1940, that would be the estate's basis and the estate's disposition of the claim would mean its realized gain or its taxable income would be the excess of the amount realized over basis. *15 Section 1001, Internal Revenue Code of 1954, Section 111, Internal Revenue Code of 1939. Thus the question here is narrowed down to whether the claim had any fair market value in 1940 when decedent died and if so, how much. The estate's position on brief is that respondent's determination that the claim had a zero value at the time of decedent's death in 1940 is erroneous and it "is clearly incredible and it should be set aside." The estate in effect argues the Commissioner's determination of zero value for the claim is arbitrary and not entitled to a presumption of correctness. The estate contends that after the Litvinov Assignment of November 16, 1933, decedent's claim for confiscated property was, in part at least, a claim against assets which had been assigned to the United States. The Litvinov agreement stated the assignment was preparatory to a final settlement of outstanding claims and counterclaims between the two governments but efforts to obtain an over-all settlement were not successful. The assigned *16 assets, amounting to about $9,000,000, were collected and deposited in a special account in the Treasury. H. Rept. No. 6382, 84th Cong., 1st Sess., 1955-2 U.S. Code and Cong. and Adm. News 2747. See United States v. Pink, 315 U.S. 203, where the full text of the Litvinov Assignment is set forth. It is petitioner's position that the United States government had at least a moral obligation to make some compensation to decedent for her confiscated property out of the assigned assets the United States Government held after 1933 and this fact gave the claim some value when she died in 1940. It may be true that in 1940 there existed some moral obligation on the part of the United States Government to devote funds derived from assigned assets to such a claim as decedent held. However, such a moral obligation in the hands of decedent was nothing more than an unenforceable inchoate right or claim which would have no determinable value in 1940. The decedent could not sue or even file a claim against the United States for any part of the $9,000,000, fund held in the Treasury under the Litvinov Assignment. The claim being nothing more than a moral obligation, would not have been *17 includable as an item of value in decedent's gross estate when she died in 1940. [2]
It was not until 1955 when Congress enacted what is now section 1641 and subsections 1641a to subsection 1641q, Title 22, that any enforceable claim against the $9,000,000 fund could be said to exist. [3] Prior to 1955 the claim was incapable of any valuation. Certainly no one could be produced as a valuation expert who would be equipped with special competence to express a realistic opinion as to the fair market value of this claim in 1940. *18 Actually the creation of this estate amounts to no more than a formality required by the administrative provisions of the statutes for the payment of an award. Section 1626, which is specifically made applicable here by section 1641q, provides the payment of the award can only be made to the person "on behalf of whom the award is made, except that - (1) if such person is deceased * * * payment shall be made to his legal representative * * *". The statute goes on to provide that if the award is not over $500 and there is no qualified executor or administrator, payment can be made to persons found entitled thereto by the Comptroller General. It is significant here that Woldemar Alexander Bary filed claim in 1956 as a designated executor in his mother's will, two years before he was actually appointed executor by the probate court. In short, the administration was instituted and completed in compliance with the statute to provide someone to whom the award could be paid. We hold the entire amount received from the Commission in 1959 constituted income to the estate and that respondent's computation of the estate's 1959 income, giving the claim a zero basis, treating the recognized *19 gain as ordinary income, and giving the estate credit for the 1959 distribution to Woldemar was correct. In its petition the estate alleged any gain it realized was a long-term gain from the sale or exchange of a capital asset and that the Commissioner erred in determining any realized gain was ordinary income and not a long-term capital gain. However, on brief petitioners make no mention or argument that any realized gain resulting from the partial payment of the claim should be accorded capital gains treatment. The contention that the respondent erred in determining the realized gain is ordinary income must be deemed abandoned. At any rate, it is perfectly clear the partial payment of the claim was not the "sale or exchange of a capital asset" within the provisions of section 1222, I.R.C. of 1954. See Herbert's Estate v. Commissioner, 139 F. 2d 756 (C.A. 3, 1943); Helvering v. Roth, 115 F. 2d 239 (C.A. 2, 1940). Respondent was right in holding the realized gain was ordinary income. In the petition filed by Woldemar A. and Nina Bary, it is admitted Woldemar received the 1959 distribution from the estate but it is alleged the funds *20 "represented a distribution of capital and did not constitute income to petitioners." No argument in support of such an allegation is made on brief. In fact, no separate argument at all is made with respect to the petitioners in Docket No. 2751-64 in either their opening brief or their reply brief. Perhaps this was done with the thought that a single argument would be sufficient for all petitioners. At any rate, our holding in the estate's case disposes of the contention made by the individual petitioners. The distribution to Woldemar in 1959 of a portion of the income received by the estate is taxable to the individual petitioners as ordinary income. Decisions will be entered for the respondent. Footnotes
1. Herbert's Estate v. Commissioner, 139 F. 2d 756 (C.A. 3, 1943); Hatch v. Commissioner, 190 F. 2d 254↩ (C.A. 2, 1951).
2. See Sec. 2033, Internal Revenue Code of 1954↩, where it is stated: "The value of the gross estate shall include the value of all property * * * to the extent of the interest therein of the decedent at the itme of his death."
3. In 1950, Congress approved the International Claims Settlement Act of 1949, which established in the Department of State a commission to administer the "Yugoslavia Claims Agreement of 1948," whereby nationals of this country could file claims against a designated fund held in the Treasury for losses resulting from confiscation of property in Yugoslavia. Pub. L. 455, 81st Cong., Second Sess., 1950-1 U.S. Code Cong. Service 12. The International Claims Settlement Act of 1949 was amended in 1955 to provide for the settlement of certain claims of nationals of the United States against Bulgaria, Hungary, Rumania, Italy and the Soviet Union. Although the 1641 section and its subsections are the pertinent portions of the statute that are here applicable, certain administrative provisions of sections 1623 and 1626 (Yugoslavia claims) are made applicable by section 1641q.↩